**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JOWEL S. NUNN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:06-cv-452-MEF-CSC** |
| | ) | |
| **GENEVA COUNTY COMMISSION,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT'S SPECIAL REPORT

COMES NOW Geneva County, Alabama Sheriff Greg Ward, Defendant in the above-styled cause, and submits his Special Report (and Answer) to the Court.

## INTRODUCTION

The Plaintiff in this action, Jowel S. Nunn, filed his Complaint against the Geneva County Commission and Sheriff Greg Ward on May 19, 2006.[1]  On June 5, 2006, the Magistrate Judge issued his Report and Recommendations with respect to this case, suggesting that the Geneva County Commission be dismissed as a Defendant prior to service and that the claims against Sheriff Ward be referred back to the Magistrate Judge for appropriate proceedings.  The following day, this recommendation was adopted; as a result, Sheriff Greg Ward is the only

---

[1] Plaintiff Jowel S. Nunn previously filed a Complaint against Geneva County, Alabama Sheriff Greg Ward and Jail Administrator Carl Rowe on November 4, 2004 in which Nunn alleged, inter alia, "unsanitary conditions of the jail," "denying medical attention," and "staph infections."  See Exibit A, Complaint, Part V (Ground One & Ground One Supporting Facts), Civil Action No. 1:04-cv-1067-F (order of final judgment dismissing action) (M.D. Ala. March 21, 2005).

Defendant remaining.  On June 6, 2006, an Order was issued commanding Sheriff Ward to file a Special Report within forty days of the date of the order.[2]

**PLAINTIFF'S ALLEGATIONS**

The Plaintiff complains that his constitutional rights were violated by the Defendant in the following manner:

A.    Lack of medical attention to his serious medical needs; and

B.    Causing him to live in unsanitary conditions in the Geneva County Jail.

**DEFENDANT'S RESPONSE TO THE PLAINTIFF'S ALLEGATIONS**

A.    **Facts**

The Geneva County, Alabama Sheriff's Department operates the Geneva County Jail pursuant to sound policies and procedures which ensure that the rights of all inmates incarcerated therein are respected.  Members of the jail staff are trained both in house and at certified training programs and academies regarding all aspects of their jobs, including the administration of medical care to inmates.  See Exhibit B, Affidavit of Geneva County Sheriff Greg Ward (hereinafter "Ward aff.").

It is the policy of the Geneva County, Alabama Sheriff's Department that all inmates confined in the Geneva County Jail be entitled to a level of health care comparable to that available to the citizens in the surrounding community in order that the inmates' physical and emotional well-being may be maintained.  All medical care rendered to inmates in the Geneva County Jail is delivered under the direction of a licensed health care practitioner.  It is departmental policy that no member of the jail staff, or any other Sheriff's Department employee, may ever summarily or arbitrarily deny an inmate's reasonable request for medical

---

[2] By Order issued July 14, 2006, this Court granted Defendant Ward's Motion for Extension of Time in Which to File Special Report & Answer.  Per the Court's Order, Defendant Ward's Special Report is due August 7, 2006.

services.  All judgments regarding the necessity of medical treatment are left to a licensed health care practitioner.  <u>See</u> Exhibit B, Ward aff., ¶4.

It is the policy of the Geneva County Sheriff's Department that all inmates incarcerated in the Geneva County Jail be allowed to request health care services at any time.  Requests of an emergency nature may be made either verbally or in writing, but all requests for non-emergency care from state or county inmates must be submitted in writing.  Members of the jail staff are charged with the responsibility of accepting requests for medical treatment from inmates and taking appropriate action to see that those requests are dealt with in a prompt and appropriate manner.  <u>See</u> Exhibit B, Ward aff., ¶5.

When a member of the jail staff receives a request for medical treatment from an inmate, it is his or her responsibility to turn that request form over to the responsibility of the on duty jailer or matron.  It is then the on duty jailer or matron's responsibility to make an appointment for the inmate with an appropriate health care provider.  Any doubt as to whether an actual need exists for medical treatment is resolved in favor of the inmate, with medical services being offered.  All requests of an emergency nature are handled immediately.  <u>See</u> Exhibit B, Ward aff., ¶6.

It is the policy of the Geneva County Sheriff's Department that persons incarcerated in the Geneva County Jail be entitled to safe and accurate dispensation and administration of prescription and nonprescription medication.  All medication prescribed for an inmate by a health care provider during the time of an inmate's incarceration is obtained by the Sheriff's Department and distributed according to the doctor's directions.  When distributing medications, members of the jail staff complete a medication log, which records the inmate's name, the medication, the date and time it was delivered, the initials of the officer delivering the

medication, or supervising its delivery, and the inmate's initials or signature acknowledging receipt.  See Exhibit B, Ward aff., ¶7.

It is the policy of the Geneva County Sheriff's Department that persons incarcerated in the Geneva County Jail be housed in humane and sanitary conditions.  On a daily basis, inmates are given cleaning materials in order that they may sanitize the living areas of their cells, under the supervision of a member of the jail staff.  In addition, at any time, an inmate may request cleaning materials, and such materials are routinely provided by members of the jail staff in response to such requests.  Common areas of the jail, including hallways and catwalks, are cleaned by trusties every morning.  A contract is maintained with a local pest control company which provides pest extermination and prevention procedures for the jail.  See Exhibit B, Ward aff., ¶8.

The Defendant in this matter is familiar with the Plaintiff due to the fact that he has been incarcerated in the Geneva County Jail on at least thirteen (13) occasions beginning on February 18, 1997, when he was arrested on the charge of shooting into an occupied vehicle.  Since that time, the Plaintiff was booked into the County Jail on February 19, 1997 on the charge of possession of stolen property; on May 8, 1997 on rape in the first degree, and enticement of a juvenile; on July 1, 1997 on the charge of enticing a child to enter a house; on October 20, 1998 for unlawful distribution of a controlled substance; on March 23, 1999 for a probation violation; on June 6, 2001 for possession of marijuana and unlawful distribution of a controlled substance; on September 27, 2002 for driving under the influence of alcohol; on May 14, 2003 for possession of marijuana; on August 9, 2003 for robbery in the first degree; on September 22, 2003 for receiving stolen property; on January 20, 2004 for driving under the influence of alcohol; and, on July 27, 2004 for trafficking in a controlled substance, possession of marijuana,

and possession of drug paraphernalia.  On June 14, 2005, the Plaintiff was declared a Habitual Felony Offender and sentenced to a term of incarceration of twenty-five years by the Circuit Court of Geneva County.  See Exhibit B, Ward aff., ¶9; Exhibit C, Inmate file, Geneva County Jail Booking Sheets (first page) for dates referenced above.

The specific claim for lack of medical care which the Plaintiff raises apparently concerns the presence of a staphylococcus aureus ("staph") infection.  Plaintiff's Inmate File contains several Inmate Request Forms designated "Medical"; however, the only ones bearing a 2005 date were submitted by the Plaintiff in early or mid June, 2005.  See, generally, Exhibit C, Plaintiff's Inmate File.  The Plaintiff was advised that the doctor's office was not open on Friday – Plaintiff's first medical request was received on Friday, June 3, 2005 at 8:03 a.m. – and that on Monday, June 6, 2005, someone would call to make an appointment for him.  Exhibit C, Inmate File, Inmate Request Form dated June 2, 2005.  The Plaintiff insisted that he could not wait for an appointment and was examined at the Wiregrass Medical Center Emergency Room less than forty-eight hours after his first Request Form was received.  See Exhibit C, Inmate File, Inmate Request Form dated June 3, 2005 and Inmate Request Form dated June 4, 2005; Exhibit D[3], Inmate Medical File, Wiregrass Medical Center ER Medical Record dated June 4, 2005.  He was again examined at the Wiregrass Medical Center Emergency Room on June 6, 2005.  Exhibit D, Inmate Medical File, Wiregrass Medical Center ER Medical Record dated June 6, 2005. Plaintiff was administered medications prescribed for him by the Emergency Room physician for approximately two weeks after his receipt of medical care at Wiregrass Medical Center.  Exhibit D, Inmate Medical File, Inmate Medication Logs dated June 6, 2005 – June 11, 2005, June 12, 2005 – June 20, 2005 and June 20, 2005 – June 21, 2005.

---

[3] The medical records from Wiregrass Medical Center are also attached to this Special Report as Exhibit E.

In addition to the above, the Plaintiff received treatment for bumps on his back and a cyst on his wrist on September 27, 2004 at the Wiregrass Medical Center. See Exhibit D, Inmate Medical File, Wiregrass Medical Center ER Medical Record dated September 27, 2004. As a result of this visit, the Plaintiff was given two prescription medications which were distributed to him according to the treating physician's directions. See Exhibit D, Inmate Medical File, Inmate Medication Log dated September 27, 2004 – October 3, 2004.

With regard to the Plaintiff's complaint that he suffered from a staphylococcus ("staph") infection while in the Geneva County Jail, this Defendant is unaware of any such infection. During the time the Plaintiff was incarcerated in 2004, an inmate was admitted to the jail who, it was later learned, suffered from a staph infection. Subsequent to the admission of this inmate, several inmates developed a rash. Each of these inmates, including the Plaintiff, was transported to a hospital for tests. None was determined to have a staph infection. Each inmate was issued a cream for the rash, and, as a preventive measure, this was given to every inmate at the jail. See Exhibit B, Ward aff.

After learning that an inmate at the jail had a staph infection, members of the jail staff sought advice from medical authorities on how to prevent the spread of that infection. As a result of that advice, Sheriff's Department authorities purchased a new hot water heater devoted solely to the washing of clothing and bedding. This water heater, which is turned to a much higher temperature than that used for bathing by inmates, is supposed to eliminate staph germs in clothing and bedding as they are being washed. In addition, jail staff and trusties were ordered to increase the amount of Clorox being used in each wash, orders were issued that all towels and washcloths in the jail be laundered every day, and hand sanitizers were installed in each cell at the jail. See Exhibit B, Ward aff. The Defendant denies that he has, in any way, acted, or caused

anyone to act in such a manner so as to deprive the Plaintiff of any right to which he is entitled. <u>See</u> Exhibit B, Ward aff.

At no time during Plaintiff's incarceration in Geneva County, Alabama was any type of serious medical need or condition of the Plaintiff ignored by a member of the jail staff. At all times, the Plaintiff received prompt and appropriate medical care, comparable to, or better than, that which he would have received had he not been incarcerated. <u>See</u> Exhibit B, Ward aff.

The Plaintiff's claims that he was forced to live in unsanitary conditions are simply without merit. As set out above with regard to departmental policy, inmates incarcerated in the Geneva County Jail are given daily access to cleaning materials, including mops, buckets, and cleaners. They may request these items at any time to clean their individual cell blocks. Daily cleaning takes place in the common areas of the jail, and these areas are under constant inspection by members of the jail staff. <u>See</u> Exhibit B, Ward aff.

As briefly noted above, on November 4, 2004, the Plaintiff filed a Complaint against Sheriff Greg Ward and Jail Administrator Carl Rowe. <u>See Jowel S. Nunn v. Greg Ward, et al.</u>, Civil Action No. 1:04-cv-1067-F (M.D. Ala.). The Plaintiff's Complaint was construed to allege, <u>inter alia</u>, failure to provide adequate medical care and causing him to live in unsanitary conditions in the Geneva County Jail. Pursuant to an order of this Court, Defendants Ward and Rowe filed a Special Report and Answer on January 17, 2005. <u>See Jowel S. Nunn v. Greg Ward, et al.</u>, Civil Action No. 1:04-cv-1067-F (order for Special Report) (Nov. 15, 2004). Plaintiff Nunn was given until February 7, 2005 in which to file a response to Defendants' Special Report. <u>See Jowel S. Nunn v. Greg Ward, et al.</u>, Civil Action No. 1:04-cv-1067-F (order that Plaintiff file response on or before Feb. 7, 2005) (Jan. 24, 2005).

The Plaintiff did not file a response as ordered by this Court, despite being "advised that his failure to respond to the defendants' written report would be treated by the court '**as an abandonment of the claims set forth in the complaint and as a failure to prosecute this action**'." See Jowel S. Nunn v. Greg Ward, et al., Civil Action No. 1:04-cv-1067-F (order that Plaintiff file response on or before Feb. 7, 2005) (Jan. 24, 2005). Thus, on February 16, 2005, the Magistrate Judge recommended that the case be dismissed. See Jowel S. Nunn v. Greg Ward, et al., Civil Action No. 1:04-cv-1067-F (Recommendation of the Magistrate Judge) (Feb. 16, 2005). The Recommendation noted that the Court "had reviewed the file in this case to determine whether a less drastic measure than dismissal is appropriate," and that "[a]fter such review, it is clear that dismissal of this case is the proper course of action." Id. The Recommendation also mentioned that "the plaintiff has exhibited a lack of respect for this court and its authority as he has failed to comply with the directives of the orders entered in this case." Id. Consequently, on March 21, 2005, Judge Mark Fuller entered judgment in favor of Defendants Ward and Rowe and dismissed the action without prejudice. See Jowel S. Nunn v. Greg Ward, et al., Civil Action No. 1:04-cv-1067-F (order of final judgment dismissing action) (M.D. Ala. Mar. 21, 2005).

## II.   LAW

### A.   All claims against Defendant in his official capacity must fail based on Eleventh Amendment immunity and because Defendant is not a "person" under 42 U.S.C. § 1983.

Plaintiff's claims against Sheriff Ward in his official capacity are due to be dismissed for lack of subject matter jurisdiction, as such claims are barred by the Eleventh Amendment to the United States Constitution. Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v.

Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacity claims must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution.  42 U.S.C. § 1983 (emphasis added).  The United States Supreme Court has held that a state official, in his official capacity, is not a "person" under § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  Any claims against Sheriff Ward in his official capacity should be dismissed because he is not a "person" under § 1983; as a result, all claims against him in his official capacity fail to state a claim upon which relief can be granted. Id.; Carr, 916 F.2d 1521, 1525 n.3.

**B.    Plaintiff's claims are barred by the doctrine of *res judicata*.**

Plaintiff Jowel S. Nunn filed an action on November 4, 2004 against Sheriff Greg Ward and Jail Administrator Carl Rowe in which he advanced allegations of, inter alia, Defendants' failure to provide adequate medical care and causing him to live in unsanitary conditions in the Geneva County Jail.  See Jowel S. Nunn v. Greg Ward, et al., Civil Action No. 1:04-cv-1067-F (M.D. Ala.), Complaint, Part V (Ground One & Ground One Supporting Facts).  Pursuant to an order of this Court, Defendants Ward and Rowe filed a Special Report and Answer on January 17, 2005.  See Jowel S. Nunn v. Greg Ward, et al., Civil Action No. 1:04-cv-1067-F (order for Special Report) (Nov. 15, 2004).  Plaintiff Nunn was given until February 7, 2005 in which to

file a response to Defendants' Special Report.  See Jowel S. Nunn v. Greg Ward, et al., Civil Action No. 1:04-cv-1067-F (order that Plaintiff file response on or before Feb. 7, 2005) (Jan. 24, 2005).  He did not file a response as ordered and, on February 16, 2005, the Magistrate Judge recommended that the Plaintiff's action be dismissed.  See Jowel S. Nunn v. Greg Ward, et al., Civil Action No. 1:04-cv-1067-F (Recommendation of the Magistrate Judge) (Feb. 16, 2005).  In support of his Recommendation, the Magistrate Judge commented that "the plaintiff has exhibited a lack of respect for this court and its authority as he has failed to comply with the directives of the orders entered in this case."  Id.  Judge Mark Fuller adopted the Recommendation of the Magistrate Judge and dismissed the Plaintiff's action on March 21, 2005.  See Jowel S. Nunn v. Greg Ward, et al., Civil Action No. 1:04-cv-1067-F (order of final judgment dismissing action) (M.D. Ala. March 21, 2005).

"Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit."  Rawlinson v. Whitney National Bank, 416 F. Supp. 2d 1263, 1272 n.19 (M.D. Ala. 2005); see also In re Piper Aircraft Corp., 244 F.3d 1289, 1296 (11th Cir. 2001).  "Federal preclusion principles apply to prior federal decisions," regardless of the source of jurisdiction.  CSX Transp., Inc. v. Brotherhood of Maintenance of Way Employees, 327 F.3d 1309, 1316 (11th Cir. 2003); see also Brown v. City of Hialeah, 30 F.3d 1433 (11th Cir. 1994) (rules of collateral estoppel are applicable to § 1983 actions).  For claim preclusion to bar an action, four elements must be met: "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action."  In re Piper Aircraft Corp., 244 F.3d at 1296.  "[T]his bar pertains not only to claims that were raised

in the prior action, but also to claims that could have been raised previously." Davila v. Delta Airlines, Inc., 326 F.3d 1183, 1187 (11th Cir. 2003) citing Trustmark Ins. Co. v. ESLU, Inc., 299 F.3d 1265, 1271 (11th Cir. 2002).

> Federal Rules of Civil Procedure 41(b) provides:
>
> Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an ***adjudication upon the merits***.

Fed. R. Civ. P. 41(b) (West 2006) (emphasis added). "A dismissal of a suit for failure to prosecute serves as an adjudication on the merits." In re Brickell, 160 Fed. Appx. 969, 971 (11th Cir. 2006) citing Fed. R. Civ. P. 41(b) and Bierman v. Tampa Elec. Co., 604 F.2d 929, 930-931 (5th Cir. 1979)[4]; see also Wasoff v. American Auto Ins. Co., 451 F.2d 767 (5th Cir. 1971); United States v. Jacobs, 100 F. Supp. 189, 192 (N.D. Ala. 1951); but see Semtek Intern. Inc. v. Lockheed Martin Corp., 531 U.S. 497, 505 (2001) ("The primary meaning of 'dismissal without prejudice', we think, is dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim."); but see Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 228 (1995) ("The rules of finality, both statutory and judge made, treat a dismissal on statute-of-limitations grounds the same way they treat a dismissal for failure to state a claim, for failure to prove substantive liability, or for failure to prosecute: as a judgment on the merits.").

In the instant action, the Plaintiff alleges the same claims he alleged in his prior action and directs such allegations at one of the two defendants in the prior action. First, with respect to the first requirement for claim preclusion, there can be little doubt that the court which rendered judgment in the Plaintiff's prior action was a court of competent jurisdiction. Further, Plaintiff made no suggestion at the time judgment was entered in the prior action – nor does he now – that

---

[4] Decisions by the former Fifth Circuit issued before October 1, 1981 are binding as precedent in the Eleventh Circuit. See Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

that court was *not* a court of competent jurisdiction.    Second, the Federal Rules of Civil

Procedure and decisions of the Eleventh Circuit Court of Appeals indicate that dismissal of an

action for failure to prosecute or to comply with an order of the court is a final judgment on the

merits.    See Fed. R. Civ. P. 41(b); In re Brickell, 160 Fed. Appx. at 971; Bierman, 604 F.2d at

930-931.    The Plaintiff's prior action was dismissed for these reasons.    Next, both the prior

action and the instant action involve the same parties: Plaintiff Jowel S. Nunn and Sheriff Greg

Ward.    Finally, the Plaintiff asserts the same causes of action in both actions; specifically, he

alleges failure to provide adequate medical care and causing him to live in unsanitary conditions.

Given that the prior action and the action presently before this Court satisfy all four

elements required for claim preclusion, the action that gave rise to this Special Report is barred

by the doctrine of res judicata – particularly claim preclusion.

Alternatively, Plaintiff's instant action must be dismissed as it is malicious as that term is

used in 28 U.S.C. § 1915.  A complaint is malicious when it 'duplicates allegations of another [ ]

federal lawsuit by the same plaintiff'."    Turner v. Correctional Medical Services, 2006 WL

1174012, at *3 (D. Del. 2006) quoting Pittman v. Moore, 980 F.2d 994, 995 (5th Cir. 1993); see

also Bilal v. Driver, 251 F.3d 1346, 1350 (11th Cir. 2001) ("a litigant's history of bringing

unmeritorious litigation can be considered" when deciding frivolousness); Sun v. Forrester, 939

F.2d 924, 925 (11th Cir. 1991) ("Under 28 U.S.C. § 1915(d), the district court may dismiss an

IFP action if it is 'frivolous or malicious'.")[5]; Harris v. Menendez, 817 F.2d 737, 739-40 (11th

Cir. 1987) (a district court's "authority to dismiss a complaint as frivolous under section 1915(d)

---

[5] The PLRA likely eliminated the discretion of district courts that this portion of the Sun decision – and 28 U.S.C. § 1915 – meant to impart.  See Bilal v. Driver, 251 F.3d 1346, 1348-49 (11th Cir. 2001) ("The PLRA made three pertinent changes to section 1915. First, dismissal is now mandatory.  Second, the word 'satisfied' has been replaced with 'determined'.  Third, the complaint now may also be dismissed under section 1915 for failure to state a claim." The Eleventh Circuit states, however, that "[t]his unique dismissal authority of the district court, although now mandatory, has not changed.").

is broader than dismissal under Fed. R. Civ. P. 12.")[6]; Mack v. Parker, 2005 WL 1366479, at *2-3 (M.D. Ala. 2005) (a federal court may properly dismiss a prisoner's *in forma pauperis* complaint as malicious "where earlier and later complaints are substantially identical").

The Plaintiff's prior Complaint and present Complaint "are substantially identical." Mack, supra. Furthermore, the dismissal of an *in forma pauperis* complaint is expressly authorized under these circumstances. Id. As such, the Plaintiff's Complaint unquestionably qualifies as malicious and deserves to be dismissed under § 1915.

### C. Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.

#### 1. Plaintiff has failed to exhaust all Administrative Remedies.

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 532 (2002) ("the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes"); Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005) (recognizing same); Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000) (recognizing that § 1997e(a) mandates an inmate's exhaustion of all 'available' administrative remedies).

The PLRA's exhaustion requirement was intended by Congress to "afford[] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Porter, 534 U.S. at 525. One of the benefits of the recently enunciated "proper exhaustion" interpretation is that it "improves the quality of those prisoner suits that are eventually filed because proper exhaustion often results in the creation of an administrative

---

[6] The Sun court emphasized that "any portions of *Menendez* purportedly overruled by this court in *Prather v. Norman,* 901 F.2d 915 (11th Cir. 1990) in view of the Supreme Court's decision in *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), were upheld as 'good law' in this circuit in *Clark,* 915 F.2d at 640 n. 1." Sun, 939 F.2d at 925 n.1

record that is helpful to the court." Woodford v. Ngo, 126 S. Ct. 2378, 2388 (2006). The

Supreme Court hypothesized that reasons for dodging the exhaustion requirement are varied, but

observed that

> [o]ne can conceive of an inmate's seeking to avoid creating an administrative
> record with someone that he or she views as a hostile factfinder, filing a lawsuit
> primarily as a method of making some corrections official's life difficult, or
> perhaps even speculating that a suit will mean a welcome-if temporary-respite
> from his or her cell.

Id. at 2385 n.1. There can be little doubt that consistently enforcing the PLRA's complete

exhaustion requirement "gives prisoners an effective incentive to make full use of the prison

grievance process and accordingly provides prisons with a fair opportunity to correct their own

errors." Id. at 2387-88.

In addition to the grievance procedure at the local level, Alabama law provides the

opportunity to file a claim and proceed before the State of Alabama Board of Adjustment

pursuant to Ala. Code § 41-9-60. The Sheriff of Geneva County is a state officer and, therefore,

is entitled to sovereign immunity. See Lancaster, 116 F.3d at 1429. Due to this immunity, the

State of Alabama has provided an administrative remedy for the recovery of money damages

through the State of Alabama Board of Adjustment.

The Plaintiff does not mention his resort to, much less exhaustion of, the grievance

procedure available at the Geneva County Jail. See Brown v. Sikes, 212 F.3d at 1207 (requiring

prisoners to affirmatively show that they have exhausted administrative remedies). The

Plaintiff's Inmate File contains no Inmate Request Forms styled as a grievance, nor does it

contain any writing that qualifies as a grievance but which was submitted on something other

than an Inmate Request Form.

As a result of Plaintiff's failure to affirmatively demonstrate his exhaustion of all available remedies, he is barred from bringing this action under § 1997e(a).  See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies).  Under the authority of 42 U.S.C. § 1997e(c)(2), this Court also has the power to dismiss Plaintiff's claim(s) without first requiring the exhaustion of administrative remedies. ("In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies."  42 U.S.C. § 1997e(c)(2).).  See Boxer X v. Harris, 437 F.3d 1107, 1110 n.2 (11th Cir. 2006) ("District courts should first consider whether the PLRA bars a prisoner plaintiff's suit prior to rendering a decision on the merits. This is a prudential consideration, because the PLRA contemplates a merits dismissal prior to a finding of exhaustion.").

**D.    Alternatively, Defendants are entitled to summary judgment based on qualified immunity because their conduct violated no constitutional right and no aspect of their conduct crossed a "bright line" contour of clearly established constitutional law.**

Defendant Ward was acting within his discretionary authority as Sheriff of Geneva County during all times relevant to Plaintiff's Complaint because all of his actions were taken in furtherance of his job duties.[7]  See, e.g., Holloman ex rel. Holloman v. Harland, 370 F.3d 1252 (11th Cir. 2004).  Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation.  Saucier v. Katz,

---

[7] See Greffey v. State of Ala. Dep't of Corrections, 996 F. Supp. 1368, 1380 (N.D. Ala. 1998) ("The primary distinction between the deliberate indifference test discussed here, and the qualified immunity analysis addressed hereafter, is this: the test for deliberate indifference involves a subjective component, while qualified immunity scrutiny invokes only an objective reasonableness inquiry.").

533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that this Defendant had "fair warning" that their conduct violated the plaintiff's constitutional rights? Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of this Defendant was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424. "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 n.4 (11th Cir. 1997) (en banc) (citations omitted).

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided Sheriff Ward with fair warning that his conduct was unlawful. The Plaintiff may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity"

16

case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to show that the conduct of the defendant was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham, 321 F.3d at 1301. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting Lassiter v. Alabama A&M University, Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994) (overruled on other grounds).

Plaintiff cannot meet his burden of demonstrating a constitutional violation or showing that clearly established law provided Sheriff Ward with fair warning that his conduct was unlawful. Therefore, Defendant Ward is entitled to qualified immunity.

### 1.      Medical Claim

In order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that Sheriff Ward was deliberately indifferent to a serious medical condition. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious'." Hudson v. McMillian, 503 U.S. 1, 9 (1992).[8]

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. A prison or medical official may be held liable under the Eighth Amendment for actions with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take

---

[8] As noted earlier in Defendant's Special Report, the Plaintiff entered a plea of guilty on June 14, 2005. At that time, the Circuit Court of Geneva County declared the Plaintiff a Habitual Felony Offender and sentenced him to a term of imprisonment of 25 years to be served with the Department of Corrections. Thus, at the time(s) alleged in the Complaint, the Plaintiff was likely a pretrial detainee. "Nevertheless, 'in regard to providing pretrial detainees with such basic necessities as…medical care[,] the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons'." Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1115 (11th Cir. 2005) quoting Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994) (quoting Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir. 1985)).

reasonable measures to abate it. Mere negligence does not suffice to prove deliberate indifference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994) quoting Helling v. McKinney, 509 U.S. 25, 35 (1993) ("The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health'."). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Generally speaking, to establish a violation of the Eighth Amendment a plaintiff must satisfy objective and subjective elements.[9]  Wilson v. Seiter, 501 U.S. 294, 298-300 (1991). With respect to violation of the Eighth Amendment due to a government official's denial of medical care, or provision of inadequate medical care, these objective and subjective elements have been refined by decisions of the United States Supreme Court and Eleventh Circuit Court of Appeals.  As a result, a plaintiff may show an objectively serious deprivation of medical care by making two important showings:

> first, an objectively 'serious medical need', Estelle[], 429 U.S. at 104…, one that, if left unattended, 'pos[es] a substantial risk of serious harm', Farmer[], 511 U.S. [at] 834…, and second, that the response made by public officials to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain', and not merely accidental inadequacy, 'negligen[ce] in diagnosi[s] or treat[ment]', or even '[m]edical malpractice' actionable under state law, Estelle, 429 U.S. at 105-06…(internal quotation marks omitted).

Taylor, 221 F.3d at 1258.  Taylor then instructs that to satisfy the subjective element

> a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference', Estelle, 429 U.S. at 105,…which is in turn defined as requiring two separate things: 'aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists [ ] and…draw[ing] of the inference', Farmer, 511 U.S. at 837.

---

[9] See Greffey, 996 F. Supp. at 1380 ("The primary distinction between the deliberate indifference test discussed here, and the qualified immunity analysis addressed hereafter, is this: the test for deliberate indifference involves a subjective component, while qualified immunity scrutiny invokes only an objective reasonableness inquiry.").

Id.

Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985) is especially instructive in light of Plaintiff's allegations in the instant action.  Hamm sought to recover against the county and sheriff for allegedly unconstitutional conditions of his confinement, including a claim that he received inadequate medical care.  The opinion noted that the jail's "visiting psychiatrist continued prescribed medications similar to that Hamm had taken prior to his incarceration." Hamm, 774 F.2d at 1570.  The court disclosed persuasive reasons for its ultimate holding as to Hamm's claim of inadequate medical care, stating:

> [t]he only evidence concerning the rash was Hamm's own testimony.  The Sheriff, on the other hand, presented medical records which showed that Hamm made numerous visits to the jail's infirmary where he was usually treated by the registered nurse on duty there. The records indicate that a physician occasionally examined Hamm as well. The jail's medical staff entertained a wide variety of complaints from Hamm and prescribed several types of medication for him. The record also shows that a psychiatrist examined Hamm at the jail and prescribed medication for him. This evidence shows that Hamm received significant medical care while at the jail. Although Hamm may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference.

Id. at 1575.

That same year, the court reviewed a district court's judgment regarding another plaintiff's claim "that the officers violated his rights by failing to give him the icepacks and aspirin prescribed by the doctor for pain upon his return to the jail."  In the context of those allegations, the court reiterated that "[d]eliberate indifference is shown not only by failure to provide prompt attention to the medical needs of a pre-trial detainee, but also by 'intentionally interfering with the treatment once prescribed'."  Aldridge v. Montgomery, 753 F.2d 970, 973 (11th Cir. 1985) quoting Estelle, 429 U.S. at 105.

The court has additionally recognized that "whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter

for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) quoting Estelle, 429 U.S. at 107.

Before there can be deliberate indifference to medical needs, such medical needs must be "serious." Hudson, 503 U.S. at 9. The Plaintiff does not allege that his condition was serious. In fact, medical literature has established that staph bacteria are omnipresent on and within the human body. Therefore, it is unlikely that Plaintiff has surpassed even the first hurdle to establishing a claim of deliberate indifference under the formula set out by the United States Supreme Court. See Farmer, supra; Hudson, supra; Estelle, supra.

The Plaintiff likely wished he was receiving different medical care or medication. The Eleventh Circuit addressed such a desire in Hamm: "[a]lthough Hamm may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference." Hamm, 774 F.2d at 1575. An inmate does not have a right to a *specific* kind of treatment. City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 245 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; *how the city [] obtains such treatment is not a federal constitutional question*") (emphasis added).

Like the plaintiff in Hamm, the Plaintiff here "made numerous visits" to Wiregrass Medical Center and doctor's offices in Geneva County. Another similarity between Hamm and the present action is embodied by the court's determination that "[t]he jail's medical staff entertained a wide variety of complaints from Hamm and prescribed several types of medication for him. The record also shows that a psychiatrist examined Hamm at the jail and prescribed medication for him. This evidence shows that Hamm received significant medical care while at the jail." Hamm, 774 F.2d at 1575. The Plaintiff here received medical care equal to or

exceeding that received by the plaintiff in <u>Hamm</u>.  It is an understatement to say this Plaintiff received "significant medical care" during his incarceration.  Far from deliberate indifference, the substantial care and treatment the Plaintiff enjoyed while at the Geneva County Jail greatly exceeds the constitutional minimum and rivals that available to the majority of unincarcerated Americans.[10]

Already this year, another district court within the Eleventh Circuit has considered claims of an inmate regarding a correctional facility's allegedly unsanitary conditions and staph infection.  In <u>Matthews v. Crosby</u>, 2006 WL 1529568 (N.D. Fla. 2006), the plaintiff-inmate complained that his cell "was unsanitary and the mattress was torn and 'filthy'."  He asked for cleaning supplies, but his request was denied.  When the plaintiff showed an "irritating lump on the right side of his neck" to a sergeant at the facility and declared a medical emergency, the sergeant rejected his medical emergency declaration.  The next day the lump "had become painful and severely irritated," prompting the plaintiff to again declare a medical emergency.  This time the plaintiff was evaluated by a facility nurse "who 'wiped-off' his neck area and provided him with ibuprofen."  The plaintiff was seen by a different facility nurse the following day who diagnosed him as having "Methicillin Resistant Staphylococcus Aureus (MRSA), a staff [sic] infection."[11]  Three days later, he was seen by the facility medical director (a medical doctor) who prescribed medication for the plaintiff and instructed him not to work in food service.  Plaintiff insisted that "he contracted MRSA as a result of being placed in unsanitized living quarters."

---

[10] "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious'."  <u>Hudson</u>, 503 U.S. at 9.

[11] Plaintiff Nunn does not allege that he developed Methicillin Resistant Staphylococcus Aureus (MRSA) – a more serious form of staphylococcus bacteria.  In fact, the Wiregrass Medical Center Laboratory Report on the culture obtained from Plaintiff's left arm wound indicates that, unlike the MRSA strain, the staphylococcus aureus bacteria present in the Plaintiff's wound was susceptible to virtually all of the drugs to which it was subjected.

The district court concluded that the plaintiff's factual allegations were insufficient to demonstrate that he received constitutionally deficient medical treatment.  Matthews, 2006 WL 1529568, at *3.  In support of its conclusion, the court pointed to the fact that the plaintiff "failed to establish that any Defendant ignored a serious medical need,[12] deprived Plaintiff of treatment in order to punish him, or was otherwise 'deliberately indifferent' to his medical needs."  Id.  The court also noted that any claim by the plaintiff regarding the adequacy of his treatment must similarly fail "as a difference in opinion regarding the proper course of medical treatment cannot support an Eighth Amendment claim."  Id.

Several courts outside this circuit have also reviewed inmate allegations involving staph infections.  Such allegations are often premised on inadequate medical care or conditions of confinement or both.  In the first of two staph-related cases decided already this year by the Third Circuit Court of Appeals, a corrections officer and his wife filed suit against the county responsible for operating the correctional facility as well as several county employees charged with operation of the facility.  Kaucher v. County of Bucks, 2006 WL 2136542 (3d Cir. 2006). The Plaintiffs argued that they contracted Methicilin Resistant staphylococcus aureus infections due to the unsanitary conditions permitted to develop in the jail by the defendants and that their substantive due process rights were violated as a result.  Before the Court of Appeals, the plaintiffs did not argue that a substantive due process right to safe working conditions had been violated; instead, they argued that their claim was "based on defendants' 'conscience-shocking' conduct in creating dangerous conditions that led to the spread of infection, in failing to offer

---

[12] With respect to staph as a "serious medical need," see Williams v. Wooten, 119 Fed. Appx. 625, 626 (5th Cir. 2004) (where an inmate's medical records showed that he "had only a 'sore' that was 'cleaned and dressed' and a 'cyst' that tested positive for a staph infection," the Fifth Circuit commented that such documentation "suggest[s] a far less serious medical condition and surgical procedure than those alleged by" the plaintiff-inmate.).

sufficient medical treatment to infected inmates and corrections officers, and in misrepresenting the risks of infection." Kaucher, 2006 WL 2136542, at *4.

The Third Circuit observed that, "[a]ccording to the Centers for Disease Control and Prevention, staph bacteria, including MRSA, are 'commonly carried on the skin or in the nose of healthy people', and at any given time, approximately 25% to 30% of people in the United States have staph bacteria colonized in their noses." Id. at *2. Ultimately, the court concluded that whether a subjective or an objective standard was employed, "defendants' conduct does not exhibit deliberate indifference to a serious risk of prison officials contracting MRSA infections." Id. at *7. As grounds for this conclusion, the court pointed to the defendants' requirement that cleaning be performed using an all-purpose detergent or bleach-and-water solution and the "various remedial and preventative measures" taken by the defendants' once an increase in MRSA infections was noticed. Id. at *8. Although these measures by defendants may have been futile in hindsight, the court emphasized its obligation to consider "defendants' decisions at the time they were made." Id.; see also Purcell ex rel. Estate of Morgan v. Toombs Co., Ga., 400 F.3d 1313, 1320 (11th Cir. 2005) ("We will not allow the advantage of hindsight to determine whether conditions of confinement amounted to 'cruel and unusual' punishment.").

In the second staph-related case decided this year by the Third Circuit, an inmate housed at the correctional facility at issue in Kaucher, supra (i.e., Bucks County Correctional Facility or "BCCF"), alleged that the correctional facility's warden violated his Eighth Amendment rights by acting deliberately indifferent to hazardous health conditions at the facility, specifically, MRSA. Oliver v. Bucks County Correctional Facility – Warden, 2006 WL 1440089 (3d Cir. 2006). While confined at BCCF in 2002, a boil emerged above the plaintiff's eye; however, the plaintiff was transferred to another facility soon after the boil first appeared. With time, the boil

became larger and was surgically removed.  The plaintiff was told the boil was a bacterial infection.  His subsequent reading of newspaper coverage of the MRSA outbreak at BCCF in 2001 (at issue in Kaucher, supra) convinced him that his bacterial infection was tied to that event, despite the fact that plaintiff's "medical records make no mention of MRSA." Encouraged by the newspaper articles, the plaintiff filed suit alleging that "the warden failed to warn him of the disease or to tell him how to avoid contracting it."

The district court determined that the evidence presented by the plaintiff failed to create a genuine issue of material fact with respect to "whether the warden knew of and disregarded 'an excessive risk to inmate health and safety'."  Id. at *1.  On appeal, the Third Circuit concurred with the district court's findings in support of the decision that the evidence did not establish a genuine issue of material fact, but added that the district court's conclusion was further warranted by the fact that the plaintiff "has not adduced any evidence which goes to the health conditions of the prison, the warden's knowledge of the serious nature of the alleged conditions, the lack of appropriate cleaning procedures, or whether he contracted or was even exposed to MRSA at all."  Id. at *1.

In Turner v. Correctional Medical Services, an inmate filed suit against the corporate provider of medical services at his institution and several employees of that medical services provider who rendered care in the institution.[13]  Turner v. Correctional Medical Services, 2006 WL 1174012 (D. Del. 2006).  The plaintiff-inmate's primary allegation was that defendants violated his Eighth Amendment right when they failed to provide adequate medical testing and treatment, causing the misdiagnosis of MRSA – a serious staph infection.   The plaintiff

---

[13] The lawsuit filed by the inmate was actually the second he had filed with respect to the alleged violation of his Eighth Amendment right based on medical claims.  The first action was filed in 2003; the second action on February 10, 2006.  The plaintiff insisted that his current case was "merely a continuation" of the action he instituted three years earlier.  Turner, 2006 WL 1174012, at *2.

contended he contracted MRSA in June, 2002, but that the condition was not diagnosed until June, 2005 due to the defendants' deliberate indifference.

The district court observed that the plaintiff's instant action named as defendants several of the same individuals named as defendants in his 2003 suit. The district court noted that the plaintiff's prior case was dismissed because it was barred by the statute of limitations, but later many defendants were granted summary judgment as to the medical claims. Not surprisingly, the court had little trouble dismissing the latter action pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1), as well as for failure to state a claim upon which relief could be granted. Turner, 2006 WL 1174012, at *3. The court added that dismissal was also appropriate as the "amended complaint is considered malicious as that term is defined by 28 U.S.C. § 1915. A complaint is malicious when it 'duplicates allegations of another [ ]federal lawsuit by the same plaintiff'." Id. quoting Pittman v. Moore, 980 F.2d 994, 995 (5th Cir. 1993); see also Bilal v. Driver, 251 F.3d 1346, 1350 (11th Cir. 2001) ("a litigant's history of bringing unmeritorious litigation can be considered" when deciding frivolousness); Sun v. Forrester, 939 F.2d 924, 925 (11th Cir. 1991) ("Under 28 U.S.C. § 1915(d), the district court may dismiss an IFP action if it is 'frivolous or malicious'.")[14]; Harris v. Menendez, 817 F.2d 737, 739-40 (11th Cir. 1987) (a district court's "authority to dismiss a complaint as frivolous under section 1915(d) is broader than dismissal under Fed. R. Civ. P. 12.")[15]; Mack v. Parker, 2005 WL 1366479, at *2-3 (M.D. Ala. 2005) (a

---

[14] The PLRA likely eliminated the discretion of district courts that this portion of the Sun decision – and 28 U.S.C. § 1915 – meant to impart. See Bilal v. Driver, 251 F.3d 1346, 1348-49 (11th Cir. 2001) ("The PLRA made three pertinent changes to section 1915. First, dismissal is now mandatory. Second, the word 'satisfied' has been replaced with 'determined'. Third, the complaint now may also be dismissed under section 1915 for failure to state a claim." The Eleventh Circuit states, however, that "[t]his unique dismissal authority of the district court, although now mandatory, has not changed.").

[15] The Sun court emphasized that "any portions of Menendez purportedly overruled by this court in Prather v. Norman, 901 F.2d 915 (11th Cir. 1990) in view of the Supreme Court's decision in Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), were upheld as 'good law' in this circuit in Clark, 915 F.2d at 640 n. 1." Sun, 939 F.2d at 925 n.1

federal court may properly dismiss a prisoner's *in forma pauperis* complaint as malicious "where earlier and later complaints are substantially identical").

In the case at bar, the evidence shows that Sheriff Ward responded appropriately each time the Plaintiff made a reasonable request for medical care. Plaintiff's records from Wiregrass Medical Center in Geneva, Alabama disclose that the Plaintiff was examined by a doctor at the Wiregrass Medical Center Emergency Room on September 27, 2004. Exhibit D, Inmate Medical File, Wiregrass Medical Center ER Medical Record dated September 27, 2004. The evaluation apparently included a culture of Plaintiff's right wrist. Exhibit D, Inmate Medical File, Wiregrass Medical Center Laboratory Report, September 30, 2004. The laboratory report of this culture revealed "no growth." Id. The Plaintiff was prescribed medications which were administered to the Plaintiff for approximately one week beginning the day they were prescribed. Exhibit D, Inmate Medical File, Inmate Medication Log sheet, Sept. 27, 2004 – Oct. 3, 2004. Plaintiff's Inmate File also contains an Inmate Request Form on which the Plaintiff made a medical request a few weeks after he visited the Emergency Room in late September, 2004. Exhibit C, Inmate File, Inmate Request Form dated October 18, 2004.[16] The bottom of the form features a notation indicating an appointment was scheduled for November 1 at 2:05 p.m. Id. The Plaintiff's Inmate File does not contain an Inmate Request Form or other evidence suggesting that he requested medical care on or around February 24, 2005. See, generally, Exhibit C, Plaintiff's Inmate File.

The Plaintiff's Inmate File does, however, contain several Inmate Request Forms designated "Medical" and bearing dates in early June, 2005. The first such Inmate Request Form states: "I need medical attention to my arm. I have a knot on my left arm which is giving me

---

[16] Comments written on the top half of the form – if any were made – are not dark enough to be read on the photocopy.

problems by itching & a burning sensation.  I would like to get it check [sic] to see if it's stafph [sic] infection.  ASAP Thank You!"  Exhibit C, Inmate File, Inmate Request Form dated June 2, 2005.  This Inmate Request Form shows that it was received June 3, 2005 at 8:03 a.m.  Id. Writing at the bottom of this Inmate Request Form states: "Dr. OFC. closed on Friday's [sic] Will call for appt on Monday 6 6-05 [the remaining writing is illegible]."[17]  Id.  An Inmate Request Form dated June 3, 2005 expresses a sentiment similar to the previous day's form: "I have a sharp pain in my hole [sic] left arm which is a big knot up under my skin.  I need to go to the emergency room.  To get it seen about and get some pain pills.  I believe it's staff infection.  ASAP Call Greg Thank you."  Exhibit C, Inmate File, Inmate Request Form dated June 3, 2005. The next day Plaintiff submitted a Request Form in which he disapproved of the scheduled doctor's appointment.  He states:

> I need to go to the emergency room.  I'm running a high fever.[18]  My arm is turning purple.  I need Medical Attention.  Call [word illegible, but likely "Sheriff"] Ward.  A hole is [word illegible] [word illegible] my arm.  I can't wait for an appt.  I need to go to the emergency room.  And don't through [sic] it away. I need a copy.

Exhibit C, Inmate File, Inmate Request Form dated June 4, 2005.

Plaintiff's medical records from Wiregrass Medical Center show that he was examined on June 4, 2005.  During this examination, a culture was taken of the wound on his left arm.  The results of this culture suggested the presence of staphylococcus aureus bacteria, but this result not known until June 7, 2005.  Exhibit C, Inmate Medical File, Wiregrass Medical Center Laboratory Report, printed June 7, 2005.  As part of the nurse's "Pain Assessment/Reassessment" of the patient, the Plaintiff described his pain as "better."  Exhibit D,

---

[17] In 2005, June 3 fell on a Friday.
[18] Despite Plaintiff's insistence "I'm running a high fever," his temperature was recorded as 100.0 when he was seen that same day in the Emergency Room.  See Ex. ___, Inmate Medical File, Wiregrass Medical Center ER Medical record, June 4, 2005.  When he visited the Emergency Room on June 6, 2005, his temperature was 99.5.

Inmate Medical File, Wiregrass Medical Center Emergency Department Nursing Assessment (reverse side), June 4, 2005.   The diagnosis was "Cellulitis/Abcess of Upper Arm/Forearm." Exhibit D, Inmate Medical File, Wiregrass Medical Center Billing Form, June 4, 2005.   The directions provided at discharge were "wound care – Observe for any other signs of infection Return to ER as needed.   Contact family physician as needed."   Exhibit D, Inmate Medical File, Wiregrass Medical Center ED-OP Home Instruction Sheet, June 4, 2005.   No limitations were placed on the Plaintiff's ability to engage in physical activity.   Id.

The day after he received medical care at the Wiregrass Medical Center Emergency Room, the Plaintiff submitted yet another Inmate Request Form.   He directed this Request to "Greg" and writes:

> Greg when you get time I need you to [word illegible] and look at the situation with my arm.   If it wasn't for Mr. Owens being concern [sic] and understanding that I'm a human-being [sic] the matter with my arm could've been worser [sic]. Also he told some of the jailers not to [word(s) illegible] any request forms either. [several words illegible] to verify that!   [remaining sentence(s) illegible]

Exhibit C, Inmate File, Inmate Request Form dated June 5, 2005.   In the second Request Form submitted by the Plaintiff on June 5, 2005, the Plaintiff wrote:

> I was running a fever Friday morning and had a [sic] open wound on my arm.   I ask [sic] your Jail Administrator (Carl Rowe) to take me to get some medical attention.   [several words illegible] doctors [sic] office open.   I told him [several words illegible] the fact that I was in pain and needed Medical Attention.   [several words illegible] that I tried to get his attention [word illegible] and for some [word illegible] he caught a [sic] attitude because he said I [remaining words illegible]

Exhibit C, Inmate File, Inmate Request Form dated June 5, 2005 (#2).   A notation at the bottom of this Request Form states: "Given to Sheriff on 6-6-05.   Return to file per 3401."   Id.

On June 6, 2005, the Plaintiff submitted another Inmate Request Form in which he demanded: "I need to [several words illegible] today [word illegible] the wound on my arm is getting [several words illegible] deeper and is throbbing.   [several words illegible] their's [sic] no

feeling in it.  If you don't mine [sic]."  Exhibit C, Inmate File, Inmate Request Form dated June 6, 2005.  Writing at the bottom of the Request Form indicates that Plaintiff was "Taken to ER 6-6-05."  Id.

This indication is confirmed by Plaintiff's medical records from Wiregrass Medical Center.  On June 6, 2005, the Plaintiff was examined at the Wiregrass Medical Center Emergency Room for the second time in three days.  Exhibit D, Inmate Medical File, Wiregrass Medical Center ER Medical Record dated June 6, 2005.  The diagnosis upon discharge was "Chronic Ulcer of Skin Site NEC," Staph Aureus Infect Site NOS/Dis Class Elsewhere" and "Penicillin-Resistant Microorganism Infection."[19]  The Inmate Medication Log for the Plaintiff reveals that the Plaintiff received the medications prescribed for him multiple times each day. Exhibit D, Inmate Medical File, Inmate Medication Logs, dated June 6, 2005 – June 11, 2005, June 12, 2005 – June 20, 2005 and June 20, 2005 – June 21, 2005.  Administration of these medications continued until at least June 21, 2005.  Id.

On June 16, 2005, the Plaintiff submitted an Inmate Request Form of an unknown nature; it was apparently intended for Sheriff Ward and Jail Administrator Rowe.  The Request Form stated:

> Carl when you get time I want to be on the first train smoking.  Help me out Carl [word illegible] tried [sic] of being down here.  I'm ready to RIDE!  If you can [several words illegible] can I get a contact visit with [several words illegible] and one friend [remaining words illegible]

Exhibit C, Inmate File, Inmate Request Form dated June 16, 2005.  Writing at the bottom of the form appears to indicate that an appointment was made for the Plaintiff on June 20, 2005.  Id. Additional writing at the bottom of the Request Form is illegible.

---

[19] Although the Billing Form for Plaintiff's June 6, 2005 Emergency Room visit lists "Penicillin-Resistant Microorganism Infection" as one of the diagnoses, the laboratory report for the culture obtained on June 4, 2005 did not reflect the presence of an organism that was Penicillin resistant.  See Ex. ___, Inmate Medical File, Wiregrass Medical Center Laboratory Report, printed June 7, 2005.

Clearly, Plaintiff has not been denied access to adequate medical care. His Complaint does not establish either the objective or subjective elements required to prove deliberate indifference to serious medical needs; therefore, his allegations regarding the provision and propriety of medical care must fail. For instance, it is by no means obvious that Plaintiff's alleged condition was "serious," especially in light of the fact the bacteria present in his wound was not the more serious MRSA type of staphylococcus bacteria. See Williams v. Wooten, 119 Fed. Appx. at 626. Furthermore, Nunn does not begin to set forth facts sufficient to show that Sheriff Ward *could draw* an inference that Plaintiff was subject to a substantial risk of serious harm and that Sheriff Ward *actually drew* that inference. See Taylor, 221 F.3d at 1258. The necessary facts simply are not present in the Complaint. Instead, the facts presented by Sheriff Ward plainly show that once the Plaintiff made a request for medical care, he promptly received that care. The Plaintiff's second visit to Wiregrass Medical Center's Emergency Room on June 6, 2004 demonstrates that his first visit two days earlier was not a random act of kindness by Geneva County Jail employees, but an intentional act of concern for the health and well-being of the Plaintiff.

Even if the precautionary measures undertaken by Sheriff Ward and his jail staff did not preclude the Plaintiff's development of staph bacteria, Sheriff Ward cannot be held liable where he put in place reasonable measures to correct the conditions of which he was aware. See Nichols v. Riley, 141 Fed. Appx. 868, 869 (11th Cir. 2005). There can be no doubt that Sheriff Ward voluntarily took significant steps to decrease, if not eliminate, staph bacteria in the jail. See Exhibit B, Ward aff. Such proactive efforts by Sheriff Ward are not consistent with an attitude of deliberate indifference to a serious risk of harm and certainly do not give rise to liability. See Kaucher, 2006 WL 2136542 (no deliberate indifference where defendants imposed

stringent cleaning requirements and took various remedial measures to control and destroy MRSA bacteria); see also Purcell ex rel. Estate of Morgan, 400 F.3d at 1320 ("We will not allow the advantage of hindsight to determine whether conditions of confinement amounted to 'cruel and unusual' punishment.").

Furthermore, the presence of staph bacteria on the Plaintiff's skin is not an altogether surprising finding. See Kaucher, 2006 WL 2136542, at *2 ("staph bacteria, including MRSA, are 'commonly carried on the skin or in the nose of healthy people', and at any given time, approximately 25% to 30% of people in the United States have staph bacteria colonized in their noses."). Often, when a wound exhibits significant growth of staph bacteria, such a result usually implicates substandard wound care, not necessarily an overly unhygienic environment. See Matthews, 2006 WL 1529568, at *5 ("it is more likely that Plaintiff contracted the infection from some source other than his unsanitary cell or mattress."). Sheriff Ward and the staff of the Geneva County Jail can only do so much to protect the Plaintiff from disease; the Plaintiff must take common-sense precautions with respect to his personal and bodily hygiene.

The Request Forms and hospital records accompanying this Special Report illustrate the responsiveness of jail staff to the Plaintiff's requests for medical care. The Medication Logs showing Plaintiff's receipt of medication prescribed for him several times each day exemplifies the medical care afforded "in-house" at the Geneva County Jail. The Plaintiff has failed to present a genuine issue of material fact regarding his claim of deliberate indifference, especially in the face of the evidentiary materials submitted by Sheriff Ward. As a result, Sheriff Ward is entitled to summary judgment on Plaintiff's claim of inadequate medical care.

### 2.    Unsanitary conditions claim.

The Plaintiff claims that the staph infection he allegedly acquired was "due to the deplorable, unkempt and foul jail conditions."  Complaint at ¶5.  He further alleges that Defendant Ward failed to "provide a hygienic facility."  Complaint at ¶7.  The Plaintiff additionally describes the Geneva County Jail as "unconstitutionally unhygienic."  Id.

Like Plaintiff's medical claims above, his conditions-of-confinement claims are also evaluated under the deliberate indifference standard.  That is,

> a prison official cannot be found liable under the Eighth Amendment for denying
> an inmate humane conditions of confinement unless the official knows of and
> disregards an excessive risk to inmate health or safety; the official must both be
> aware of facts from which the inference could be drawn that a substantial risk of
> serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837.  The question that must be asked next is "whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health'."  Id. quoting Helling, 509 U.S. at 35.  It is noteworthy that "[t]he challenged condition must be 'extreme'."  Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) quoting Hudson, 503 U.S. at 9.

A prison official who is aware of a substantial risk to inmate health or safety may nevertheless remain beyond the threshold of liability where that official "responded reasonably to the risk, even if the harm ultimately was not averted."  Farmer, 511 U.S. at 844.  Though "contemporary standards of decency" are a guidepost for determining whether or not an act or condition constitutes cruel and unusual punishment, "[t]his fact…does not give judges carte blanche to impose their theories of penology on the nation's prisons."  Bass v. Perrin, 170 F.3d 1312, 1316 (11th Cir. 1999).  Indeed, corrections and jail officials are to be accorded great deference as to the manner in which they operate their facility.  See Shaw v. Murphy, 532 U.S.

223 (2001)[20]; Turner v. Safley, 482 U.S. 78 (1987); Bell v. Wolfish, 441 U.S. 520 (1979); Lawson v. Singletary, 85 F.3d 502 (11th Cir. 1996).

As discussed in the medical claims section above, Matthews v. Crosby, supra, involved an inmate who complained that his cell "was unsanitary and the mattress was torn and 'filthy'" and that he received inadequate medical treatment for a staph infection. With respect to the plaintiff's conditions-of-confinement allegations, the court began by noting that the plaintiff is required to plead conditions that "demonstrate an infliction of pain 'without any penological purpose' or an 'unquestioned and serious deprivation of basic human needs' such as medical care, exercise, food, warmth, clothing, shelter, or safety." Id. at *4 quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Simply put, the plaintiff did not allege facts demonstrating that the conditions to which he was exposed "were so 'extreme' as to pose an unreasonable risk of serious damage to his future health....Moreover, although Plaintiff alleges that he contracted the staff infection because of the conditions in his cell, Plaintiff has offered no facts establishing a causal connection between the two." Matthews, 2006 WL 1529568, at *5. The court goes on to remark that "it is more likely that Plaintiff contracted the infection from some source other than his unsanitary cell or mattress." Id.[21] Like his other claims, the plaintiff also failed to conclusively link how defendants' decision to house him with infected and non-infected inmates "posed a risk to his future health, as he was already infected." Id. at *6.

---

[20] "[U]nder Turner and its predecessors, prison officials are to remain the primary arbiters of the problems that arise in prison management." Shaw, 532 U.S. at 230.
[21] Following this statement, the court refers readers to an article – "Methicillin-Resistant Staphylococcus aureus Skin or Soft Tissue Infections in a State Prison--Mississippi, 2000," available at http://www.cdc.gov/mmwr/preview/mmwrhtml/mm5042a2.htm - which "revealed that MRSA infections were transmitted person-to-person within the prison." Matthews, 2006 WL 1529568, at *5. See also Merrill v. Vicari, 2006 WL 758297, at *3 n.2 (D.N.J. 2006) ("MSRA [sic] outbreaks in prison settings have been linked to poor inmate hygiene and sharing contaminated personal items. MSRA [sic] may be transmitted from person to person by contaminated hands and personal items.").

Plaintiff Nunn's Complaint suffers from many of the same fatal defects as the complaints mentioned in the forgoing cases.  In this case, none of the conditions of which the Plaintiff complains constitute an expressive risk to the Plaintiff's health or safety.  Further, there is no evidence that Sheriff Ward disregarded any alleged risk.  Where jail officials attempt to remedy constitutional shortcomings but fail to do so, the official cannot be found to have been "deliberately indifferent" unless the official knew of, but disregarded, the appropriate effective alternatives.  LaMarca v. Turner, 995 F.2d 1526, 1536 (11th Cir. 1993).  It is clear from the evidence that Sheriff Ward acted within his established policies and procedures with regard to the Plaintiff's "unsanitary conditions" claim.  Based on the foregoing, it is clear that Sheriff Ward has not violated the Plaintiff's constitutional rights with respect to his conditions of confinement claim.  Further, the Plaintiff cannot show that clearly established law provided Sheriff Ward with fair warning that his conduct was unlawful.  Therefore, Sheriff Ward is entitled to qualified immunity on the Plaintiff's conditions of confinement claim.

### 3.    Conspiracy claim.

To the extent the Plaintiff's Complaint attempts to state a claim for conspiracy against Sheriff Ward, such attempt is due to be dismissed for numerous reasons.  First, the Plaintiff alleges that "[t]he various acts and omissions alleged herein were engaged in and carried out by, between and among the individual defendants"; however, Sheriff Ward is the only defendant in this action at present.  It is legally impossible to engage in a conspiracy with one's self.  Second, the Plaintiff does not allege facts necessary to state a claim for a conspiracy.  Third, the Plaintiff does not allege that he belongs to a class of persons that Congress intended to protect by passing 42 U.S.C. § 1985, nor does he allege that the purpose of the alleged conspiracy was to deprive

him of "equal protection of the laws, or of equal privileges and immunities under the laws."  42 U.S.C. § 1985(3).

The dismissal of the Geneva County Commission before service leaves Sheriff Ward as the sole defendant in this action.  A reading of the Complaint reveals that the Plaintiff may attempt to state a claim for conspiracy by the defendants.  In addition to the shortcomings in pleading discussed below, any attempt by the Plaintiff to state a claim for conspiracy should be dismissed given that Sheriff Ward is the only defendant in this action.  To state a claim for conspiracy, there must be multiple actors.  See Farese v. Scherer, 342 F.3d 1223, 1232 (11th Cir. 2003) (recognizing that § 1985 requires conduct by more than one actor, thus plaintiff's conspiracy claim against the only remaining defendant should be dismissed).  As it is legally impossible for the Plaintiff to make out a conspiracy claim in an action having only one defendant – assuming the Plaintiff is actually attempting to do so, any such attempt by the Plaintiff is due to be dismissed.

The Complaint's mere allegation of a conspiracy among the Defendants is conclusory and insufficient to state a claim where qualified immunity is at issue.  See Gonzalez, 325 F.3d at 1235.  To establish a cause of action under § 1985(3), a plaintiff must prove the following elements:

> (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

Trawinski v. United Technologies, 313 F.3d 1295, 1299 (11th Cir. 2002) quoting Childree v. UAP/GA AG CHEM, Inc., 92 F.3d 1140, 1146-47 (11th Cir.1996).  To survive a motion to dismiss, the Plaintiff must allege specific acts on the part of Defendants – unsupported

conclusions of law or mixed fact and law do not state a claim. See Marsh, 268 F.3d at 1036 n.16.

By addressing the allegations of the Complaint one-by-one against the elements required to support a § 1985(3) cause of action, it is clear that the Plaintiff fails to state a claim for conspiracy. As emphasized repeatedly above, the Plaintiff has not established – and cannot establish – a violation of his rights. Therefore, establishing a conspiracy to violate said rights will be exceedingly difficult, if not impossible, especially given that Sheriff Ward is the only defendant in this action.

First, Sheriff Ward adamantly denies violating the Plaintiff's rights; this Defendant specifically denies depriving the Plaintiff of "equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). The Plaintiff, however, does not even allege that he has been deprived of "equal protection of the laws, or of equal privileges and immunities under the laws." Moreover, the Complaint's conclusory assertion that "[t]he various acts and omissions alleged herein were engaged in and carried out by, between and among the individual defendants" falls well short of the specificity required when pleading civil rights claims in this circuit. See Marsh, 268 F.3d at 1036 n.16; see also Hansel v. All Gone Towing Co., 132 Fed. Appx. 308 (11th Cir. 2005).

Second, the Plaintiff does not allege any *specific* act in furtherance of the alleged conspiracy. Again, vague and generic references to purported conduct of a defendant does not suffice when attempting to state a claim for conspiracy under § 1985(3). See Marsh, 268 F.3d at 1036 n.16. Next, the Plaintiff does not allege invidious discriminatory intent on the part of any defendant. See Trawinski v. United Technologies, 313 F.3d 1295, 1299 (11th Cir. 2002) ("a claim under § 1985(3) requires the proof of invidious discriminatory intent as well as the

violation of a serious constitutional right protected not just from official, but also from private encroachment."). Finally, Sheriff Ward denies injuring, or causing to be injured, or violating, or causing to be violated, the Plaintiff's rights. With respect to this particular cause of action, the Plaintiff does not allege any harm suffered at the hands of this Defendant. For example, Count Three of the Complaint does not feature any language which identifies *specific* acts or omissions of Sheriff Ward, alleges that such specific acts or omissions directly caused Plaintiff's harm, and then explains a connection between the specific act or omission and the harm Plaintiff allegedly suffered. These simple steps are the bare minimum required to state almost *any* tort-type claim, not just one for conspiracy. As the Plaintiff does not satisfy these simple steps, to the extent he attempts to state a claim for conspiracy, such attempt is due to be dismissed.

This attempt to state a conspiracy claim – to the extent it is one – additionally deserves to be dismissed since the Plaintiff does not have standing to maintain a § 1985(3) claim against Sheriff Ward. The Plaintiff's lack of standing stems from the fact that he does not claim to be a member of either of the two classes of persons that Congress intended to protect by enacting 42 U.S.C. § 1985(3). The Eleventh Circuit Court of Appeals "has stated that § 1985(3) protects two types of classes: (1) 'those kinds of classes offered special protection under the equal protection clause, and (2) classes that Congress was trying to protect when it enacted the Ku Klux Klan Act'." Farese, 342 F.3d at 1229 n.7 quoting Childree v. UAP/GA AG CHEM, Inc., 92 F.3d 1140, 1147 (11th Cir. 1996). The Plaintiff has not alleged that he belongs to either one of the two classes § 1985(3) is designed to protect. As a result, the Plaintiff lacks standing to go forward with a conspiracy claim against Defendant Ward.

Finally, even if the Plaintiff succeeds in stating a claim under § 1985(3), Sheriff Ward is entitled to qualified immunity with respect to such claim. See Ford v. Moore, 237 F. 2d 156, 162

n.2 (2nd Cir. 2001) (dismissing § 1985(3) conspiracy claims on the basis of qualified immunity); Bisbee v. Bey, 39 F.3d 1096, 1102 (10th Cir. 1994) (reasoning that qualified immunity should be applied to actions brought under § 1985(3)); but see Burrell v. Bd. of Trustees of Georgia Military College, 970 F.2d 785, 794 (11th Cir. 1992) (holding that qualified immunity is not available as a defense to § 1985(3) conspiracy claims).  The conduct of Sheriff Ward, as set out above, does not give rise to a § 1985(3) conspiracy claim, nor did it violate clearly established law.

Therefore, to the extent Plaintiff attempts to state a claim for conspiracy, such attempt fails due to his omission of allegations necessary to support such a claim.  Plaintiff also lacks standing to pursue a conspiracy claim due to the fact that he does not allege that he belongs to one of the classes of persons Congress intended to protect by passing 42 U.S.C. § 1985(3).  Even if the Plaintiff is said to state a claim for conspiracy under § 1985, Sheriff Ward is entitled to qualified immunity as to such claim.

**3.     Plaintiff's claims against Sheriff Ward must fail because Sheriff Ward had no personal involvement in the alleged constitutional violations.**

In addition to the pleading defects already discussed in this Special Report, the Plaintiff also fails to allege sufficient personal involvement by Sheriff Ward to support his claims against this Defendant.  The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by defendants and the constitutional deprivation.  Swint v. City of Wadley, 51 F.3d 988 (11th Cir. 1995).  The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury.  Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986).

The Plaintiff has failed to allege that Sheriff Ward was in any way personally involved in any alleged violation of Plaintiff's constitutional rights. Plaintiff has offered no allegation demonstrating that this Defendant was in any way involved in the actions he claims were constitutionally infirm. There are absolutely no specific facts tending to show that Sheriff Ward personally participated in the acts or omissions alleged by the Plaintiff, nor does the Plaintiff allege *specifically* how this Defendant violated his constitutional rights. As such, all of Plaintiff's claims against Sheriff Ward are due to be dismissed.

### 4.    Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990). However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151 quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[22] "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited'." Marsh v. Butler County, 268

---

[22] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

## MOTION FOR SUMMARY JUDGMENT

Defendant Sheriff Greg Ward respectfully requests that this honorable Court treat his Special Report as a Motion for Summary Judgment, and grant unto him the same.

## CONCLUSION

The Defendant in this action, Geneva County, Alabama Sheriff Greg Ward, denies each and every allegation made by the Plaintiff, Jowel S. Nunn, in his Complaint.  This Defendant neither acted, nor caused anyone else to act, in any manner so as to deprive the Plaintiff of any right to which he was entitled.

**RESPECTFULLY SUBMITTED,** this the 7th day of August, 2006.


**s/C. RICHARD HILL, JR. (HIL045)**
**DANIEL D. FORDHAM (FOR055)**
Attorneys for Defendants
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail: rhill@webbeley.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 7th day of August, 2006, I electronically filed the Defendant's Special Report and Answer with the Clerk of the Court using the CM/ECF system, and that I have mailed by United States Mail, postage prepaid, to the following non-CM/ECF participant:

Jowel S. Nunn
Ventress Correctional Facility
Post Office Box 767
Clayton, Alabama  36016


**s/C. Richard Hill, Jr.**
**OF COUNSEL**