**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JOWEL S. NUNN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:06-cv-452-MEF-CSC** |
| | ) | |
| **GENEVA COUNTY COMMISSION,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE**

COMES NOW Geneva County, Alabama Sheriff Greg Ward, Defendant in the above-styled cause, and submits his Reply to the Plaintiff's Response to the Defendant's Special Report as follows:

**INTRODUCTION**

On August 7, 2006, Defendant Greg Ward, Sheriff of Geneva County, Alabama, submitted his Special Report to this Court. In his Special Report, Sheriff Ward explained at length why the Plaintiff's claims against him are due to be dismissed or, alternatively, why he is entitled to immunity to the Plaintiff's allegations. First, Sheriff Ward argued that all official capacity claims against him must fail based on Eleventh Amendment immunity and because, under 42 U.S.C. § 1983, he is not a "person." Second, Sheriff Ward pointed out that the Plaintiff had previously filed an action against him and the jail administrator of the Geneva County Jail on November 4, 2004 asserting the same claims alleged by the Plaintiff in the action presently before this Court and that the doctrine of *res judicata* bars the current suit. Next, Sheriff Ward argued that the Plaintiff's failure to comply with the Prison Litigation Reform Act (PLRA)

precludes Plaintiff's maintenance of this suit. Fourth, Sheriff Ward contended that he is entitled to summary judgment based on qualified immunity. Finally, Sheriff Ward insists that the Plaintiff's claims against him cannot proceed because he had no personal involvement in the alleged constitutional violations.

The Plaintiff filed a response to the Defendant's Special Report on or about September 5, 2006, in which the Plaintiff attempted to rebut Sheriff Ward's arguments for summary judgment. As explained more fully below, the Plaintiff failed in this attempt. Consequently, Sheriff Greg Ward is due to be granted summary judgment.

## DISCUSSION

I.   **ALL CLAIMS AGAINST SHERIFF WARD IN HIS OFFICIAL CAPACITY MUST FAIL BASED ON ELEVENTH AMENDMENT IMMUNITY AND BECAUSE WARD IS NOT A "PERSON" UNDER 42 U.S.C. § 1983.**

Sheriff Ward argued in his Special Report that Eleventh Amendment immunity bars the Plaintiff's claims against him in his official capacity. See Special Report, pp.8-9; Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

The Plaintiff responded to Sheriff Ward's claim of Eleventh Amendment immunity by citing Buckley v. Fitzsimmons, 509 U.S. 259, 268 (1993) in support of his proposition that the Defendant's claim of official immunity "will not bar plaintiff from obtaining damages under

2

section 1983 because § 1983 does not facially provide for official immunity." Plaintiff's Response to Defendant's Special Report ("Plaintiff's Response"), p.1. The portion of the <u>Buckley</u> opinion to which the Plaintiff cites unambiguously states: "[s]ince *Tenney*, we have recognized two kinds of immunities under § 1983." <u>Buckley</u>, 509 U.S. at 268. That paragraph goes on to note that the "two kinds of immunities under § 1983" are qualified immunity and absolute immunity. <u>Id.</u> With respect to the Plaintiff's argument that Sheriff Ward's claim of official immunity "will not bar plaintiff from obtaining damages under section 1983 because § 1983 does not facially provide for official immunity," <u>Buckley</u> observes that under qualified immunity "government officials are *not subject to damages liability* for the performance of their discretionary functions when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known'." <u>Id.</u> quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982) (emphasis added). The opinion then notes that "that some officials perform 'special functions' which, because of their similarity to functions that would have been immune when Congress enacted § 1983, deserve *absolute protection from damages liability*." <u>Id.</u> at 268-69 <u>citing</u> <u>Butz v. Economou</u>, 438 U.S. 478, 506 (1978) (emphasis added). Plaintiff is correct in his assertion that § 1983 does not *provide for* any particular immunity; however, the Plaintiff is mistaken in arguing that the sheriff's claim of immunity would not bar him from obtaining damages under § 1983. The United States Supreme Court has recognized that actions brought pursuant to § 1983 are indeed subject to at least two kinds of immunities: qualified and absolute. <u>Id.</u>

    Further, the Plaintiff confuses Eleventh Amendment immunity and qualified immunity when he states that "[t]he Eleventh Amendment Immunity protects 'all but the plainly incompetent or those who knowingly violate the law[']." Plaintiff's Response, p.2.

Nevertheless, he contends, for the first time,[1] that "the defendant nad [sic] his staff allowed an [sic] staphylococcus infected inmate to live among the jail population, did not segregate this inmate until it was far to [sic] late and the plaintiff along with several other inmates had become infected also." Plaintiff's Response, p.2.[2] The Plaintiff's Response then adds that such conduct "demonstrates a culpable state of mind and the eleventh amendment doesnt [sic] insulate the defendant from suit for prospective relief to remedy violations of federal constitutional law." The Plaintiff may be accurate in his assertion that the Eleventh Amendment does not insulate Sheriff Ward from a claim for prospective relief or costs ancillary to such prospective relief; however, a review of the Complaint does not disclose that the Plaintiff requested *any* prospective relief. See, generally, Complaint.[3] Therefore, this argument is moot.

In his Response, the Plaintiff does not respond to the argument that Sheriff Ward is not a "person" under 42 U.S.C. § 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Therefore, Sheriff Ward will assume that the Plaintiff does not dispute this point.

---

[1] See Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1314 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.") (citation omitted); see also Steger v. General Elec. Co., 318 F.3d 1066, 1077 & n.11 (11th Cir. 2003). Sheriff Ward objects to Plaintiff's attempt to plead additional allegations at this stage of the litigation.

[2] In his Complaint, the Plaintiff alleged that "[a]s a consequence of the defendants [sic] failure to act, plaintiff was kept locked up with other inmates effectively exposing *them* to staph infection as well." Complaint at ¶ 6 (emphasis added). Although this statement is similar to Plaintiff's assertion above that *he* developed a staph infection due to the defendant and his staff allowing a "staphylococcus infected inmate to live among the jail population," there is a critical difference. In his Complaint, Plaintiff alleged that Defendants risked other inmates developing a staph infection as a result of confining *him* (i.e., Plaintiff) with other inmates. Id. Such an allegation does not state a claim for violation of the *Plaintiff's* constitutional rights. Furthermore, since the Plaintiff lacks standing to represent the interests of his fellow inmates, such an allegation fails to state a claim for violation of *anyone's* constitutional rights. See Granite State Outdoor Advertising, Inc. v. City of Clearwater, Fla., 351 F.3d 1112, 1116 (11th Cir. 2003) ("a party generally may assert only his or her own rights and cannot raise the claims of third parties not before the court.").

[3] Moreover, the Plaintiff is no longer confined at the Geneva County Jail. "The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief." McKinnon v. Talladega County, Ala., 745 F.2d 1360, 1363 (11th Cir. 1984) citing Holland v. Purdy, 457 F.2d 802 (5th Cir. 1972). Thus, any attempt by the Plaintiff to seek prospective and/or injunctive relief is moot.

As Sheriff Ward is an executive state official, he is entitled to Eleventh Amendment immunity to all claims against him in his official capacity. His entitlement to this immunity is further warranted by the Plaintiff's failure to present any authority to the contrary.

## II. THE PLAINTIFF'S COMPLAINT IS BARRED BY THE DOCTRINE OF *RES JUDICATA*.

Under the doctrine of *res judicata* – specifically claim preclusion – the Plaintiff is prohibited from maintaining the instant action. As discussed in the Special Report, the Plaintiff filed a lawsuit against Sheriff Greg Ward and Jail Administrator Carl Rowe on November 4, 2004, in which he alleged, inter alia, defendants' failure to provide adequate medical care and causing him to live in unsanitary conditions in the Geneva County Jail. See Jowel S. Nunn v. Greg Ward, et al., Civil Action No. 1:04-cv-1067-F (M.D. Ala.), Complaint, Part V (Ground One & Ground One Supporting Facts). Pursuant to an order of this Court, Defendants Ward and Rowe filed a Special Report and Answer on January 17, 2005. See Jowel S. Nunn v. Greg Ward, et al., Civil Action No. 1:04-cv-1067-F (order for Special Report) (Nov. 15, 2004). Plaintiff Nunn was permitted until February 7, 2005 to file a response to Defendants' Special Report. See Jowel S. Nunn v. Greg Ward, et al., Civil Action No. 1:04-cv-1067-F (order that Plaintiff file response on or before Feb. 7, 2005) (Jan. 24, 2005). He did not file a response as ordered and, on February 16, 2005, the Magistrate Judge recommended that the action be dismissed for Plaintiff's failure to prosecute. See Jowel S. Nunn v. Greg Ward, et al., Civil Action No. 1:04-cv-1067-F (Recommendation of the Magistrate Judge) (Feb. 16, 2005). In support of his Recommendation, the Magistrate Judge commented that "the plaintiff has exhibited a lack of respect for this court and its authority as he has failed to comply with the directives of the orders entered in this case." Id. Judge Mark Fuller adopted the Recommendation of the Magistrate Judge and dismissed the Plaintiff's action on March 21, 2005. See Jowel S. Nunn v. Greg Ward,

et al., Civil Action No. 1:04-cv-1067-F (order of final judgment dismissing action) (M.D. Ala. March 21, 2005).

Contrary to the Plaintiff's insistence otherwise, the instant action ***is*** barred by *res judicata* because all of the elements needed to satisfy that doctrine have been met, including the requirement that there be a final judgment on the merits. See Defendant's Special Report, pp.11-12; In re Piper Aircraft Corp., 244 F.3d 1289, 1296 (11th Cir. 2001). Sheriff Ward demonstrated in his Special Report that "[a] dismissal of a suit for failure to prosecute serves as an ***adjudication on the merits***." In re Brickell, 160 Fed. Appx. 969, 971 (11th Cir. 2006) citing Fed. R. Civ. P. 41(b) and Bierman v. Tampa Elec. Co., 604 F.2d 929, 930-931 (5th Cir. 1979)[4] (emphasis added); see also Wasoff v. American Auto Ins. Co., 451 F.2d 767 (5th Cir. 1971); United States v. Jacobs, 100 F. Supp. 189, 192 (N.D. Ala. 1951); but see Semtek Intern. Inc. v. Lockheed Martin Corp., 531 U.S. 497, 505 (2001) ("The primary meaning of 'dismissal without prejudice', we think, is dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim."); but see Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 228 (1995) ("The rules of finality, both statutory and judge made, treat a dismissal on statute-of-limitations grounds the same way they treat a dismissal for failure to state a claim, for failure to prove substantive liability, or for failure to prosecute: ***as a judgment on the merits***.") (emphasis added).

The Plaintiff insists that *res judicata* "cannot apply when the plaintiff did not have a 'full and fair opportunity' to litigate that issue in the earlier case." Plaintiff's Response, p.6. The Plaintiff fails to understand, however, that he ***did*** have a "full and fair opportunity" to litigate all the issues in the earlier case. He simply chose not to do so and must now bear the consequences

---

[4] Decisions by the former Fifth Circuit issued before October 1, 1981 are binding as precedent in the Eleventh Circuit. See Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

of his irresponsibility.  The Plaintiff cannot seriously argue that he "wrongly assumed that an initial filing would be sufficient to address his grievance"[5] when this Court informed the Plaintiff "that his failure to respond to the defendants' written report would be treated by the court '**as an abandonment of the claims set forth in the complaint and as a failure to prosecute this action**'."  Jowel S. Nunn v. Greg Ward, et al., Civil Action No. 1:04-cv-1067-F (Recommendation of the Magistrate Judge) (Feb. 16, 2005) quoting Court's Jan. 24, 2005 Order that Plaintiff file response on or before Feb. 7, 2005.  The Magistrate Judge also stated that "the plaintiff was '**specifically cautioned that [his failure] to file a response in compliance with the directives of this order**' would result in the dismissal of this civil action."  Id.  It is inconceivable that an individual presented with such a straightforward warning could nevertheless "wrongly assume[] that an initial filing would be sufficient to address his grievance."  Plaintiff's Response, p.7.

The Plaintiff also attributes his failure to respond in the previous case to the fact that he "is a pro se litigant who has no knowledge of procedure and the Federal Rules of Civil Procedure."  Plaintiff's Response, p.7.  The problem with this argument is that ***no*** knowledge of procedure or the Federal Rules of Civil Procedure is required to understand the explicit language of the Court's January 24, 2005 Order.  See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) ("Pro se litigants must follow the same rules of procedure that govern other litigants.") (citation omitted).  The Order clearly stated that Plaintiff's "failure to respond to the defendants' written report would be treated by the court '**as an abandonment of the claims set forth in the complaint and as a failure to prosecute this action**'" and that "the plaintiff was '**specifically cautioned that [his failure] to file a response in compliance with the directives of this order**' would result in the dismissal of this civil action."  Jowel S. Nunn v. Greg Ward, et al., Civil

---

[5] Plaintiff's Response, p.7.

Action No. 1:04-cv-1067-F (Recommendation of the Magistrate Judge) (Feb. 16, 2005) quoting Court's Jan. 24, 2005 Order that Plaintiff file response on or before Feb. 7, 2005. A legal education is not needed to interpret and comply with those instructions. See Jourdan v. Jabe, 951 F.2d 108, 109 (6th Cir. 1991) ("there is no cause for extending this [pro se latitude] to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer"). Although a litigant's pro se status entitles him to several advantages not afforded litigants represented by counsel, liberal construction of deadlines is not among such advantages. See Jones v. Phipps, 39 F.3d 158, 163 (7th Cir. 1994) ("pro se litigants are not entitled to a general dispensation from the rules of procedure or court imposed deadlines"); Jourdan, 951 F.2d at 110 (affirming dismissal of pro se complaint, not "as the result of inartful pleading or any lack of legal training, but rather because he failed to adhere to readily comprehended court deadlines of which he was well-aware."); Ishler v. C.I.R., 2006 WL 2170136, at *3 (N.D. Ala. 2006) quoting Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996) (citing Jourdan, 951 F.2d at 110) ("Where, for example, a pro se litigant fails to comply with an easily understood court-imposed deadline, there is no basis for treating that party more generously than a represented litigant."). Thus, there is no merit to the Plaintiff's argument that his pro se status somehow precluded him from filing a response.

Also without merit is the Plaintiff's apparent attempt to allege that he did not or could not file a response in the previous case because the Defendants[6] failed to provide him access to the

---

[6] Plaintiff alleges that "Defendants" did not provide him access to the courts; however, only one defendant remains a party to this action: Sheriff Greg Ward. After reviewing the Complaint, the Magistrate Judge recommended that Geneva County Commission be dismissed as a defendant prior to service pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). See Jowel S. Nunn v. Geneva County Comm'n, et al., Civil Action No. 1:06-cv-452-MEF, Recommendation of the Magistrate Judge (June 5, 2006). Although the recommendations of the Magistrate Judge were not expressly adopted, it is reasonable to assume that the Geneva County Commission was dismissed as a defendant since the June 6, 2006 Order issued by the Magistrate Judge does not indicate or suggest that any further action is required of the Geneva County Commission. See Jowel S. Nunn v. Geneva County Comm'n, et al., Civil Action No. 1:06-cv-452-MEF, Order (June 6, 2006).

courts.[7]  The Plaintiff's success in filing a complaint on November 4, 2004 and his subsequent success filing a complaint on May 19, 2006, along with numerous other documents since that time, undercuts his allegation that the Defendants obstructed his access to the courts.  See Wilson v. Blankenship, 163 F.3d 1284, 1291 (11th Cir. 1998) (concluding that prisoner's access-to-courts claim was meritless where prisoner prosecuted his civil rights action in the district court and undertook an appeal); Asad v. Crosby, 158 Fed. Appx. 166, 172 (11th Cir. 2005) (finding no interference with prisoner's access to the courts where prisoner filed two amended complaints and an appeal to the Eleventh Circuit Court of Appeals).  Furthermore, it is inconsistent for the Plaintiff to first argue that his lack of formal legal education excuses his failure to file a response in the previous case, only to then argue that the Defendants' failure to provide him access to the courts is the reason for his omission.

Sheriff Ward has demonstrated the satisfaction of all the elements of *res judicata*.  As a result, the Plaintiff's present action is barred by the doctrine of *res judicata* and is due to be dismissed.

## III.    THE PLAINTIFF'S FAILURE TO COMPLY WITH THE PRISON LITIGATION REFORM ACT BARS HIS COMPLAINT.

Sheriff Ward's Special Report discussed the exhaustion requirement under the Prison Litigation Reform Act (PLRA).  See 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 532 (2002); Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005); Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000).  The Plaintiff admits the existence and applicability of the PLRA's exhaustion requirement.  See Plaintiff's Response, p.8 ("The plaintiff concurs that exhaustion is required in Federal law prison condition cases").  However, the Plaintiff's argument that "[i]n the

---

[7] The Plaintiff states: "This was further aggrivated [sic] by the defendants lack of access to courts that the defendants do not provide."  Plaintiff's Response, p.7.  Sheriff Ward assumes the Plaintiff's first reference to "defendants" was meant to read "plaintiff's."

absence of such prohibitions, courts should be deemed to retain the power to make exceptions to a general rule of dismissal by staying the action pending exhaustion based on the circumstances of individual cases" is mistaken.  Plaintiff's Response, p.8 <u>citing</u> <u>Cruz v. Jordon</u>, 80 F. Supp. 2d 109, 124 (S.D.N.Y. 1999).  The Special Report observed in the "medical claim" section that recent amendment of the PLRA has resulted in several significant changes.  Special Report, p.25 n.14.  One such change is the elimination of the district court's discretion with respect to prisoner lawsuits; more specifically, "dismissal is now mandatory."  <u>Bilal v. Driver</u>, 251 F.3d 1346, 1348-49 (11th Cir. 2001); <u>see also</u> <u>Woodford v. Ngo</u>, 126 S. Ct. 2378, 2382 (2006); <u>Booth v. Churner</u>, 532 U.S. 731, 739 (2001).  Another difference is that "the complaint now may also be dismissed under section 1915 for failure to state a claim."  <u>Id.</u>  Therefore, it is clear that the district court does ***not*** "retain the power to make exceptions to a general rule of dismissal by staying the action pending exhaustion based on the circumstances of individual cases."  Plaintiff's Response, p.8 <u>citing</u> <u>Cruz v. Jordon</u>, 80 F. Supp. 2d at 124.

The Plaintiff is similarly mistaken in his contention that he "is required to exhaust only those 'plain, speedy, and effective' administrative remedies that the court determines are 'fair and effective'."  Plaintiff's Response, p.9.  Since the Supreme Court's decision in <u>McCarthy v. Madigan</u>, 503 U.S. 140 (1992) – on which the Plaintiff relies, the Court decided <u>Porter v. Nussle</u>, <u>supra</u>.  In <u>Porter</u>, the Court explained in detail the progression of the PLRA and specifically commented that

> [o]nce within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is ***now mandatory***. <u>See</u> <u>Booth v. Churner</u>, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L.Ed.2d 958 (2001). All 'available' remedies must now be exhausted; those remedies need not meet federal standards, ***nor must they be 'plain, speedy, and effective'***. See <u>ibid.</u>; see also <u>id.</u>, at 740, n.5, 121 S. Ct. 1819. ***Even when the prisoner seeks relief not available in grievance proceedings***, notably money damages, ***exhaustion is a prerequisite to suit***.

Porter, 534 U.S. at 524 (emphasis added); see also Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) ("Since exhaustion is now a pre-condition to suit, the courts cannot simply waive those requirements where they determine they are futile or inadequate. Such an interpretation would impose an enormous loophole in the PLRA, which Congress clearly did not intend.").  In Booth v. Churner, supra, the Court observed that

> [w]hen Congress replaced the text of the statute as construed in *McCarthy* with the exhaustion requirement at issue today, it presumably understood that under *McCarthy* the term 'effective' in the former § 1997e(a) eliminated the possibility of requiring exhaustion of administrative remedies when an inmate sought only monetary relief and the administrative process offered none.  It has to be significant that Congress removed the very term we had previously emphasized in reaching the result Booth now seeks, and the fair inference to be drawn is that Congress meant to preclude the *McCarthy* result.

Booth, 532 U.S. at 740.  In other words, a prisoner seeking only money damages must exhaust every administrative process, even though such administrative process does not allow for the award of money damages.  Id.; Woodford, 126 S. Ct. at 2382-83 citing Booth, 532 U.S. at 734 ("as we held in *Booth,* a prisoner must now exhaust administrative remedies even where the relief sought--monetary damages--cannot be granted by the administrative process."); see also Alexander, 159 F.3d at 1326-27 (prisoner must exhaust all available administrative remedies, even those that are futile or inadequate).

The Plaintiff contends that he "filed a [sic] inmate request form and clearly marked the box indicating that it was a grievance."  Plaintiff's Response, p.9.  This statement by the Plaintiff does not satisfy his responsibility to affirmatively demonstrate exhaustion of all administrative remedies.  See Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000).  Assuming, *arguendo*, the Plaintiff actually filed an inmate request form designated a "grievance," the submission of one inmate request form likely cannot be considered "exhaustion" of all administrative remedies.  See Woodford, 126 S. Ct. 2378; Williams v. LaClair, 128 Fed. Appx. 792 (2d Cir. 2005)

(affirming dismissal of complaint for failure to exhaust where prisoner alleged that guard discarded prisoner's grievance, but prisoner did not explain his failure to pursue exhaustion after learning that grievance was discarded).

The Plaintiff's argument regarding the Alabama Board of Adjustment is disingenuous. He insists it is ridiculous for Sheriff Ward to assert "that there is a remedy in the Alabama Board of Adjustment…where the recovery caps at $500.00, and is inadequate for this type of claim." Plaintiff's Response, p.9.  Not only does the Plaintiff fail to elaborate as to why resort to the Alabama Board of Adjustment "is inadequate for this type of claim," but on the following page he contradicts his previous comment when he says "the Alabama Board of Adjustment is without authority to grant damages."  Plaintiff's Response, p.10.

Neither the Plaintiff's Complaint nor his Response affirmatively show his exhaustion or attempt to exhaust the administrative grievance process at the Geneva County Jail.  Furthermore, the Plaintiff has yet to explain what, if any, action(s) he has taken since he allegedly submitted a grievance.  With respect to that alleged grievance, the Plaintiff does not state to whom he submitted the grievance, the date he submitted the grievance, the nature of the grievance or any other circumstances surrounding his attempt(s) to exhaust the Geneva County Jail administrative grievance procedure.  It is clear the Plaintiff has not complied with the PLRA in that he failed to exhaust all available administrative grievance procedures.  For these reasons, the Plaintiff's Complaint is barred and, therefore, due to be dismissed.

## IV.     THE PLAINTIFF'S FAILURE TO ESTABLISH A GENUINE ISSUE OF MATERIAL FACT AS TO HIS CLAIMS DEMANDS THAT SHERIFF WARD BE GRANTED SUMMARY JUDGMENT.

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant.  Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990).  However, a

plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[S]ummary judgment shall be granted, 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law'." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) quoting Fed. R. Civ. P. 56(c). "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited'." Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

A.     **Medical Claim**

To establish a violation of his Eighth Amendment rights as a result of Sheriff Ward's alleged deliberate indifference to his serious medical needs, the Plaintiff must prove, first, "an objectively 'serious medical need'" and, second, "that the response made by public officials to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain', and not merely accidental inadequacy, 'negligen[ce] in diagnosi[s] or treat[ment]', or even '[m]edical malpractice' actionable under state law." Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) quoting Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). To demonstrate that the response of public officials was "poor enough to constitute 'an unnecessary and wanton infliction of pain'," id., "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

As discussed in the Special Report, it is unlikely the Plaintiff has satisfied even the first requirement for a claim of deliberate indifference: an objectively serious medical need.  See Estelle, supra.  While staphylococcus bacteria ("staph") infection can become a serious condition, it is not clear from the Plaintiff's Complaint, his Response or his hospital records that he had a "serious medical need" *at the time(s)* mentioned in his Complaint.[8]  See Williams v. Wooten, 119 Fed. Appx. 625, 626 (5th Cir. 2004) (where an inmate's medical records showed that he "had only a 'sore' that was 'cleaned and dressed' and a 'cyst' that tested positive for a staph infection," the Fifth Circuit commented that such documentation "suggest[s] a far less serious medical condition and surgical procedure than those alleged by" the plaintiff-inmate.); Stepnay v. Goff, 164 Fed. Appx. 767, 770 (10th Cir. 2006) (noting that plaintiff "may not avoid dismissal…by merely asserting conclusory allegations that his condition obviously required a doctor's attention because most skin conditions are not intuitively serious."); Arce v. Banks, 913 F. Supp. 307, 309-10 (S.D.N.Y. 1996) (small cyst-like growth on forehead not sufficiently serious).

On neither of the two occasions when the Plaintiff was examined at the Wiregrass Medical Center Emergency Room – June 4, 2005 and June 6, 2005 – did the treating physician recommend that the Plaintiff be admitted to the hospital or otherwise indicate the Plaintiff had a "serious medical need."   See Special Report, Ex. C, Inmate Medical File, Wiregrass Medical Center ER Medical Record dated June 4, 2005 and Wiregrass Medical Center ER Medical Record dated June 6, 2005.  Granted, it may be possible for a person to have a "serious medical

---

[8] Simply because the Plaintiff characterizes his alleged condition as a "serious medical need" does not make it so for purposes of Eighth Amendment analysis.  See Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) (general conclusory allegation failed to state a claim); Tate v. City of Eufala, Ala., 165 F. Supp. 303, 305 (M.D. Ala. 1958) citing Dinwiddie v. Brown, 230 F.2d 465 (5th Cir. 1956) ("mere characterization in a complaint of conduct as unlawful does not meet the test of sufficiency.").

need" and not be admitted to a hospital; however, given the Plaintiff's description of his condition on the Inmate Request Forms, it seems that any reasonable doctor would have admitted the Plaintiff for overnight observation.  See, e.g., Special Report, Ex. C, Inmate Medical File, Inmate Request Form dated June 4, 2005 ("I need to go to the emergency room. I'm running a high fever. My arm is turning purple. I need medical attention.").

Not only was the Plaintiff *not* admitted for overnight observation, he was at the hospital ***less than one hour*** each of his two visits.  See Special Report, Ex. E, Inmate Medical File, Wiregrass Medical Center Emergency Department Nursing Assessment dated June 4, 2005 ("Initial Contact Time: 1636"; "1735 DC [discharge] instructions given written & verbal") and Wiregrass Medical Center Emergency Department Nursing Assessment dated June 6, 2005 ("Initial Contact Time: 1320"; "1410 Disch[arged] back to jail").  Anyone who has ever visited a hospital emergency room for treatment knows that it is virtually impossible to arrive, be treated and leave in one hour, especially if your alleged condition is of any significance.

Assuming, *arguendo*, the Plaintiff had a "serious medical need," he has not – and cannot – demonstrate that Sheriff Ward was deliberately indifferent to such alleged serious medical need.  As mentioned above, to show deliberate indifference the Plaintiff must prove "that the response made by public officials to that [serious medical] need was poor enough to constitute 'an unnecessary and wanton infliction of pain', and not merely accidental inadequacy, 'negligen[ce] in diagnosi[s] or treat[ment]', or even '[m]edical malpractice' actionable under state law." Taylor, 221 F.3d at 1258 quoting Estelle, 429 U.S. at 105-06.  The Plaintiff must go farther than demonstrating a simple mistake or negligent omission on the part of Sheriff Ward; he must illustrate a desire by Sheriff Ward to cause the Plaintiff "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105-06; see also Farmer, 511 U.S. at 837 ("Mere

negligence does not suffice to prove deliberate indifference.").  In light of the repeated provision of adequate medical care, the Plaintiff has not – and cannot – show deliberate indifference by Sheriff Ward to his purported "serious medical need."  See Affidavit of Sheriff Greg Ward ("Ward aff."), ¶¶ 4-7, 10, 12, 14.

The Plaintiff cannot, in good faith, contend that Sheriff Ward was deliberately indifferent to any medical need.  The Plaintiff submitted an Inmate Request Form seeking medical attention on Thursday, June 2, 2005.[9]  He was advised that the doctor's office was not open on Friday and that someone would call to make an appointment for him to see the doctor on Monday, June 6, 2005.  See Exhibit C, Inmate File, Inmate Request Form dated June 2, 2005.  The Plaintiff insisted that he could not wait for an appointment and was transported to Wiregrass Medical Center for evaluation on Saturday, June 4, 2005.  See Exhibit C, Inmate File, Inmate Request Form dated June 3, 2005 and Inmate Request Form dated June 4, 2005; Exhibit E,[10] Inmate Medical File, Wiregrass Medical Center ER Medical Record dated June 4, 2005.  Through Inmate Request Forms submitted June 5, 2005 and June 6, 2005, the Plaintiff demanded that he needed medical attention concerning the *same* condition for which he was evaluated and treated by medical professionals on June 4, 2005.  See Exhibit C, Inmate File, Inmate Request Forms dated June 5, 2005 and Inmate Request Form dated June 6, 2005.  As a result, the Plaintiff was

---

[9] As mentioned in the Special Report, the Plaintiff claims he requested medical attention on February 24, 2005; however, a review of the Plaintiff's Inmate File discloses no Inmate Request Form submitted on or around that date requesting medical attention.  See Ward aff., ¶¶ 4-6, 10, 12, 14.  The Plaintiff's Response does not discuss or even mention a February 24, 2005 request for medical attention, or the Special Report's disavowal of knowledge of such a request.  Instead, the Plaintiff refers only to requests for medical attention submitted in early June, 2005.  As a result, Sheriff Ward requests this Court treat as abandoned any attempt by the Plaintiff to base a claim on the Complaint's allegations regarding February 24, 2005, to the extent any such attempt exists.  See Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp., 10 F.3d 1563, 1568 (11th Cir. 1994) (The District Court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment."); Drakeford v. Alabama Co-op. Extension System, 416 F. Supp. 2d 1286, 1313 (M.D. Ala. 2006) (finding that plaintiff abandoned claim where he "failed to address it at all in his reply brief"); O'Gwynn v. City of Foley, 2002 WL 32993824, at *3 n.6 (slip op.) (S.D. Ala. 2002) (presuming plaintiff abandoned potential claim where he did not address it in his summary judgment response).

[10] The medical records from Wiregrass Medical Center are also attached to this Special Report as Exhibit E.

again transported to the Wiregrass Medical Center Emergency Room on June 6, 2005 – his second visit in three days.  See Exhibit E, Inmate Medical File, Wiregrass Medical Center ER Medical Record dated June 6, 2005.  For approximately two weeks after his treatment at the Wiregrass Medical Center Emergency Room, jail officials administered to the Plaintiff medications prescribed for him by the Emergency Room physician.  See Exhibit D, Inmate Medical File, Inmate Medication Logs dated June 6, 2005 – June 11, 2005, June 12, 2005 – June 20, 2005 and June 20, 2005 – June 21, 2005.

The foregoing review of Plaintiff's evaluations by medical professionals plainly demonstrates the provision of repeated and adequate medical care to the Plaintiff by Sheriff Ward.  The Plaintiff requested medical attention on Thursday, June 2, 2005, was told the doctor's office was not open on Friday, June 3, 2005 and that an appointment would be made for him on Monday, June 6, 2005.  See Exhibit C, Inmate File, Inmate Request Form dated June 2, 2005.  He then stated he could not wait until the following week to receive medical care and, as a result, was transported to the Wiregrass Medical Center Emergency Room for evaluation on June 4, 2005.  See Exhibit C, Inmate File, Inmate Request Form dated June 3, 2005; Inmate Request Form dated June 4, 2005.  When the Plaintiff requested medical attention on June 5, 2005 and June 6, 2005, Sheriff's Department officials accommodated his requests and transported him to the Emergency Room, despite the fact that he had been evaluated there less than two days earlier. See Exhibit C, Inmate File, Inmate Request Forms dated June 5, 2005; Inmate Request Form dated June 6, 2005; Exhibit E, Inmate Medical File, Wiregrass Medical Center ER Medical Record dated June 6, 2005.  Such patience, cooperation and care by Sheriff's Department and jail officials *does not* constitute deliberate indifference to a serious medical need.  See Coney v. Grayer, 2006 WL 2258015 (slip op.) (11th Cir. 2006) (affirming dismissal of prisoner's pro se

complaint where Report and Recommendation concluded that plaintiff "had not adequately alleged 'that any defendant acted with a culpable state of mind in denying or delaying medical care, as evidenced by the abundance of care received by the plaintiff'.").  If anything, their conduct greatly exceeded the level of care they are required to furnish the Plaintiff under the law.

The Plaintiff incredulously argues that Sheriff Ward and his staff "took an unusually long time to provide, although inadequate, medical attention."  Plaintiff's Response, p.1.  The Plaintiff submitted a request for medical attention on Thursday, June 2, 2005 and was told he would have to wait until the next week for medical care.  He then informed jail officials that he could not wait that long and was provided medical care on Saturday, June 4, 2005.  There is no indication that *his* condition was life-threatening or in any sense an emergency.[11]  The Plaintiff's hospital records do not reveal any indication that the Plaintiff should have received medical attention sooner than he did.  Jail officials could have required the Plaintiff to wait until the following week to be evaluated, but instead opted to transport him to the Emergency Room on Saturday, June 4, 2005.  Viewing the record in a light most favorable to the Plaintiff, the record cannot be said to present a genuine issue of material fact regarding deliberate indifference by Sheriff Ward.  See Calhoun v. Thomas, 360 F. Supp. 2d 1264, 1284-85 (M.D. Ala. 2005) (pretrial detainee did not present evidence sufficient to establish a genuine issue of material fact as to whether defendants were deliberately indifferent to plaintiff's need for medical care where evidence showed that plaintiff was seen several times by doctors following his arrest and received medication).

---

[11] The Plaintiff cites an article by Dr. Rachel Gorwitz, published in the New England Journal of Medicine, in which Dr. Gorwitz allegedly concluded that staphylococcus infections, "once into the bloodstream[,] are lifethreatening [sic]."  Plaintiff's Response, p.5.  The Plaintiff does not allege, much less conclusively establish, (1) that the staphylococcus bacteria detected in/on *his* wound was the "flesh eating staphylococcus bacteria identified by Dr. Rachel Gorwitz," (2) that the staphylococcus bacteria in/on his wound had accessed his bloodstream, or (3) that *his* particular acquisition and manifestation of the staphylococcus bacteria was life-threatening.

With respect to the Plaintiff's contention that he received inadequate medical care, he should understand that his dissatisfaction with or disagreement about the course of treatment selected by medical professionals will not support a claim of deliberate indifference.  See Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (1st Cir. 1981) ("Where a prisoner has received…medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law.").  Perhaps the Plaintiff insisted that he return to the Emergency Room on June 6, 2005 in an attempt to obtain different medical care than the medical care he received there on June 4, 2005.  Regardless of his motivation, the Plaintiff received ample and wholly adequate medical attention.  His preference for a different type of medical care is not a matter with which constitutional law is concerned.  See Hamm, 774 F.2d at 1575 ("Although Hamm may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference.").

As the Plaintiff has failed to present a genuine issue of material fact as to any aspect of his deliberate indifference medical claim, Sheriff Ward is entitled to summary judgment.

### B.     Unsanitary Conditions Claim

Despite the Plaintiff's claims in his Complaint regarding the "deplorable, unkempt and foul jail conditions," the Plaintiff's Response contains no mention of such allegations. Complaint at ¶5; see also, generally, Plaintiff's Response.  Sheriff Ward will assume that the Plaintiff does not dispute the Special Report's arguments in opposition to the Plaintiff's claims of an "unconstitutionally unhygienic" jail.  Nevertheless, Sheriff Ward will use this opportunity to emphasize the Plaintiff's unsanitary conditions claim's lack of merit.

The Plaintiff makes certain unsupported allegations, then points to such allegations as examples of Sheriff Ward's "culpable state of mind."  <u>See</u> Plaintiff's Response, pp.2, 4 & 5.  To demonstrate a "culpable state of mind," a plaintiff must show that a prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).  "Defendants must have been 'subjectively aware of the substantial risk of serious harm in order to have had a 'sufficiently culpable state of mind''."  <u>Carter v. Galloway</u>, 352 F.3d 1346, 1349 (11th Cir. 2003) <u>quoting</u> <u>Farmer</u>, 511 U.S. at 834-38; <u>Wilson v. Seiter</u>, 501 U.S. 294, 299 (1991).  There must be "proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation."  <u>Zatler v. Wainwright</u>, 802 F.2d 397, 401 (11th Cir. 1986).

Contrary to the Plaintiff's claims, Sheriff Ward was straightforward about the fact that, in 2004, an inmate was admitted to the jail who, it was later learned, experienced a staph infection.  Ward aff., ¶ 12.  After learning that an inmate at the jail had a staph infection, members of the jail staff sought advice from medical authorities on how to prevent the spread of that infection.  Ward aff., ¶ 13.  Based on that advice, Sheriff's Department officials took several steps designed to combat the presence and/or spread of staph bacteria potentially at the jail.  These steps included the purchase of a new hot water heater for the laundering of clothing and bedding.  Ward aff., ¶ 13.  This water heater allows clothing and bedding to be washed at a much higher water temperature, a technique intended to eliminate staph bacteria in linens.  Ward aff., ¶ 13.  Sheriff's Department officials also instructed jail staff and trusties to increase the amount of

Clorox[12] added to each load of laundry, ordered that all towels and washcloths in the jail be washed every day and installed hand sanitizer dispensers in each cell.  Ward aff., ¶ 13; see Kaucher v. County of Bucks, 455 F.3d 418, 428 (3d Cir. 2006) ("When defendants recognized an increased number of MRSA infections, they took various remedial and preventative measures….In retrospect, these actions may have been insufficient to prevent the Kauchers' infections. But we evaluate defendants' decisions at the time they were made."); Purcell ex rel. Estate of Morgan v. Toombs Co., Ga., 400 F.3d 1313, 1320 (11th Cir. 2005) ("We will not allow the advantage of hindsight to determine whether conditions of confinement amounted to 'cruel and unusual' punishment.").

In light of Sheriff Ward's prudent efforts to eliminate, to the extent possible, the inmates' exposure to staph bacteria, the Plaintiff has not – and cannot – show deliberate indifference by this Defendant.  The Plaintiff ignores the fact that, on a daily basis, inmates are given cleaning materials in order that they may sanitize the living areas of their cells, under the supervision of a member of the jail staff.  Ward aff., ¶ 8.  In addition, at any time, an inmate may request cleaning materials, and such materials are routinely provided by members of the jail staff in response to such requests.  Id.  If the cleanliness of the jail did not meet or exceed the Plaintiff's personal expectations, he had the resources at his disposal to remedy that problem.  See Matthews v. Crosby, 2006 WL 1529568, at *5 (slip op.) (N.D. Fla. 2006) ("An 'unsanitized' cell and a 'filthy' and torn mattress are certainly unpleasant conditions, but they are not so grave as to violate contemporary standards of decency.").  Common areas of the jail, including hallways and

---

[12] Clorox is featured on the United States Environmental Protection Agency's list of Registered Products Effective Against Methicillin Resistant *Staphylococcus aureus* (MRSA).  See "List G: EPA's Registered Antimicrobial Products Effective Against Methicillin Resistant Staphylococcus aureus (MRSA) and Vancomycin Resistant Enterococcus faecalis or faecium (VRE)," p.3 available at http://www.epa.gov/oppad001/list_g_mrsa_vre.pdf (January 4, 2006), accessed September 15, 2006.  Sheriff Ward reiterates that the Plaintiff has not alleged that the bacteria present in his wound was Methicillin-Resistant *Staphylococcus aureus* (MRSA).  The Plaintiff has only alleged that he developed a standard staphylococcus bacteria infection.

catwalks, are cleaned by trusties every morning.  Ward aff., ¶ 8.  A contract is maintained with a local pest control company which provides pest extermination and prevention procedures for the jail.  Id.

The numerous precautions taken by Sheriff Ward and his staff in response to the threat of staph bacteria show that they were anything but deliberately indifferent to *any* risk to inmate health and safety, whether large or small.  Medical authorities advised the jail staff on how to prevent the spread of staph bacteria.  Ward aff., ¶ 13.  Sheriff Ward and the jail staff relied on that guidance and implemented the suggested measures.  Even if such preventive measures are not considered entirely sufficient in retrospect – which is very unlikely, it would be inappropriate to condemn officials' reasonable actions using the advantage of keen hindsight.  See Kaucher, 455 F.3d at 428; Purcell ex rel. Estate of Morgan, 400 F.3d at 1320.

Perhaps most importantly, the Plaintiff has failed to produce any admissible evidence that would tend to create a genuine issue of material fact with respect to the Plaintiff's claims of deliberate indifference to a serious medical need or unsanitary conditions.[13]  The Plaintiff has yet to come forward with admissible evidence capable of substantiating his allegations that he "became infected with a staph infection due to the deplorable, unkempt and foul jail conditions." Complaint at ¶ 5.  Such evidence (or the lack thereof) is especially significant where, as here, the Defendant contends that the Plaintiff's poor hygiene practices are primarily responsible for the alleged increased presence of staph bacteria in his wound.  See "Management of Methicillin-Resistant *Staphylococcus aureus* (MRSA) Infections," "Transmission," Federal Bureau of Prisons – Clinical Practice Guidelines (August, 2005) available at http://www.bop.gov//news/PDFs/mrsa.pdf, accessed August 6, 2006 ("MRSA is transmitted

---

[13] See Defendant Greg Ward's Motion to Strike submitted with this Reply to Plaintiff's Response to Defendant's Special Report.

from person to person by contaminated hands. MRSA may also be transmitted by sharing towels, personal hygiene items, athletic equipment, through close-contact sports, and by sharing injection drug use or tattoo equipment.")[14]; Matthews, 2006 WL 1529568, at *5 ("although Plaintiff alleges that he contracted the staff [sic] infection because of the conditions in his cell, Plaintiff has offered no facts establishing a causal connection between the two."). The Plaintiff's failure to establish a causal connection between the allegedly "deplorable, unkempt and foul jail conditions" and the alleged presence of increased staph bacteria in/on his wound is fatal to his claim that the former caused the latter. Even if he established such a causal connection, he would *still* have to demonstrate that Sheriff Ward's deliberate indifference contributed to one or the other, or both. This he has not – and cannot – do.

The Plaintiff has similarly failed to offer any admissible evidence capable of showing that Sheriff Ward was deliberately indifferent to a serious medical need of the Plaintiff, particularly in light of the extensive medical care he received. The Plaintiff requested medical attention and was told he would have to wait until the following week to receive such care. He then told jail officials he could not wait to receive medical attention and was subsequently provided care much sooner. Even if the Plaintiff had been forced to wait until the following week to receive medical attention, it is unlikely that such a wait would support a claim of deliberate indifference. See Logan v. Clarke, 119 F.3d 647 (8th Cir. 1997) (no deliberate indifference where prison doctor took wait-and-see approach to inmate's skin infection and ultimately prescribed medication within *one month* of initial complaint); Gutierrez v. Peters, 111 F.3d 1364 (7th Cir. 1997) (delays of "over a week" and fourteen days, during ten-month course of treatment for large infected cyst, did not constitute deliberate indifference); Lopez v. Tell, 137

---

[14] Sheriff Ward again reiterates that the Plaintiff has not alleged that the bacteria present in his wound was Methicillin-Resistant *Staphylococcus aureus* (MRSA). The Plaintiff has only alleged that he developed a standard staphylococcus bacteria infection.

Fed. Appx. 36, 37 (9th Cir. 2005) (concluding that plaintiff "failed to raise a genuine issue of material fact as to whether it would be clear to a reasonable doctor under the circumstances that a delay in Lopez's scalp surgery would pose a substantial risk of serious harm."). The Plaintiff's claims are due to be dismissed as a result of his failure to present a genuine issue of material fact with respect to either claim.

## V.     PLAINTIFF'S REQUEST FOR PUNITIVE DAMAGES IS DUE TO BE DENIED.

The Plaintiff's request for punitive damages is due to be stricken. Absent waiver, which is not present or alleged in this action, claims for punitive damages pursuant to 42 U.S.C. § 1983 are barred by the Eleventh Amendment to the United States Constitution as the award would, in effect, be one against the state as this Defendant is a state official. See City of Newport v. Fact Concerts, 453 U.S. 247 (1981). The award of punitive damages against the State of Alabama is similarly barred by statute. Ala. Code § 6-11-26 (1975). As discussed above, Sheriff Ward is an executive officer of the State, and a suit against him is, in essence, a suit against the State of Alabama. Thus, the Plaintiff's claim for punitive damages against this Defendant is due to be dismissed.

Furthermore, the Plaintiff does not address his request for punitive damages in his Response to Sheriff Ward's Special Report. As a result, Sheriff Ward requests the Court declare Plaintiff's request for punitive damages abandoned. See Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp., 10 F.3d 1563, 1568 (11th Cir. 1994) (The District Court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment."); Drakeford v. Alabama Co-op. Extension System, 416 F. Supp. 2d 1286, 1313 (M.D. Ala. 2006) (finding that plaintiff abandoned claim where he "failed to address it at all in his reply brief"); O'Gwynn v. City of Foley, 2002 WL 32993824, at *3 n.6 (slip op.) (S.D. Ala.

2002) (presuming plaintiff abandoned potential claim where he did not address it in his summary judgment response).

<u>**CONCLUSION**</u>

The Plaintiff's failure to come forth with any admissible evidence in response to Sheriff Ward's Special Report, or to rebut the arguments presented by his Special Report, require that all Plaintiff's claims be dismissed.   First, the Plaintiff misinterprets Supreme Court authority regarding the nature of immunity available to an official such as Sheriff Ward.   Then, the Plaintiff is unable to explain why *res judicata* does not apply to bar the instant action.   Next, the Plaintiff fails to demonstrate his exhaustion of all administrative grievance procedures available to him at the Geneva County Jail or, in the alternative, why he could not exhaust all such administrative procedures.   Finally, and perhaps most importantly, the Plaintiff neglects to provide admissible evidence to counter the competent evidence supplied by Sheriff Ward in regard to Plaintiff's medical and unsanitary conditions claims.   As a result, all of Plaintiff's claims against Sheriff Greg Ward are due to be dismissed.

R<small>ESPECTFULLY</small> S<small>UBMITTED</small> this the 20th day of September, 2006.

s/C. **RICHARD HILL, JR. (HIL045)**
**DANIEL D. FORDHAM (FOR055)**
Attorneys for Defendant
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail: rhill@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 20th day of September, 2006, I electronically filed the Defendant's Reply to Plaintiff's Response to Defendant's Special Report with the Clerk of the Court using the CM/ECF system, and that I have mailed by United States Mail, postage prepaid, to the following non-CM/ECF participant:

Jowel S. Nunn
Ventress Correctional Facility
Post Office Box 767
Clayton, Alabama  36016


**s/C. Richard Hill, Jr.**
**OF COUNSEL**