IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOWELL S. NUNN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | CASE NO. 1:06cv452-MEF |
| | ) | (WO) |
| | ) | |
| GREGG WARD, | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Jowel S. Nunn ("Nunn"), a state prisoner, asserts that Sheriff Greg Ward ("Ward") acted with deliberate indifference by failing to provide adequate medical treatment for a staph infection during his confinement in the Geneva County Jail. In addition, Nunn contends that Ward subjected him to unconstitutional conditions of confinement.

Ward filed a special report and supporting evidentiary materials addressing Nunn's claims for relief. Pursuant to the orders entered in this case, the court deems it appropriate to treat Ward's special report as a motion for summary judgment. (Doc. No. 6.) Thus, this case is now pending on Ward's motion for summary judgment. Upon consideration of such motion and the evidentiary materials filed in support thereof, the court concludes that Ward's motion for summary judgment is due to be granted.

## I.  FACTS

The Sheriff is familiar with Nunn and his various encounters with law enforcement officials.  (Doc. No. 13-3, Ward's Affid., p. 4.) Between February 1997 and his transfer to a state prison facility in July or August 2005, Nunn frequented the Geneva County Jail on at least thirteen separate occasions.  (*Id*.; Doc. No. 13-4, Def's Ex. C.)   During one of Nunn's more memorable visits in 2004, several inmates, including Nunn, developed a rash shortly after an individual with a staph infection was booked into the jail. (Doc. No. 13-3, Ward's Affid., p. 5.)  When jail officials discovered that this individual was suffering from a staph infection, jailers transported Nunn and the other inmates to the hospital for testing. (*Id*.)  Although none of the inmates tested positive for the presence of staphylococcus, the inmates were prescribed a cream as a precautionary measure.  (*Id*.)

Upon learning of the infected inmate, jail officials also sought advice from medical officials on ways to prevent the spread of the infection.  (*Id.*)  As a result, jail officials purchased a new hot water heater, which was set to a higher than average temperature, and installed hand sanitizers in each cell.  (*Id*., at p. 6)  In addition, jail officials ordered staff members and trusties to wash all used towels and wash cloths every day and increase the amount of Clorox used in each wash.  (*Id*.)

During another ill-fated visit to the jail in June 2005, Nunn developed a growth on his left arm.  (Doc. 13-6, p. 99.)  On June 2, 2005, Nunn submitted an inmate request form to Ward, the jail administrator, and medical personnel, in which he stated:

> I need medical attention to my arm. I have a knot on my left arm which is giving me problems by itching & a burning sensation. I would like to get it check[ed] to see if it's stafph [*sic*] infection. ASAP. Thank you!

(Doc. No. 13-4, p. 5.) The next morning, the jail administrator responded to Nunn's request, stating that the doctor's office was closed on Fridays and that he would schedule an appointment for Nunn on Monday. (*Id.*) On June 3, 2005, Nunn submitted an additional medical request, stating:

> I have a sharp pain in my hole left arm which is a big knot up under my skin. I need to go to the emergency room [t]o get it seen about and get some pain pills. I believe it's staph infection. ASAP call Greg! Thank you.

(*Id.*, at p.7.)

The following day, Nunn sent another inmate request form to Ward and the jail administrator, emphasizing the urgency of his request as follows:

> I need to go to the emergency room. I'm running a high fever. My arm is turning purple. I need medical attention. Call . . . Ward. A hole is . . . my arm. I can't wait for an appt. I need to go to the emergency room. . . ."

(*Id.*, at p. 9.) Jail officials granted Nunn's request and transported him to the Wiregrass Medical Center later that afternoon. (Doc. No. 13-6, p. 93.) Emergency room personnel obtained a culture from the growth on Nunn's left arm and sent it to a laboratory for testing.[1] (*Id.*, at p. 99.) A physician diagnosed Nunn as suffering from cellulitis of the left arm,

---

[1] Upon admission, hospital personnel noted that Nunn's chief complaint was a "spider bite." (Doc. No. 13-6, p. 93.)

prescribed Bactrim, and advised him to "observe for any other signs of infection" and "return to ER as needed." (*Id.*, at pp. 103, 109.) On June 5, 2005, Nunn sent two grievances to Ward, complaining that the jail administrator and other officials had ignored his previous medical requests. (Doc. No. 13-4, pp. 11, 13.) Ward placed Nunn's complaints in a file. (*Id.*)

On June 6, 2005, Nunn submitted an inmate request form to Ward and the jail administrator, indicating that his condition had not improved and that the wound was "deeper and is throbbing" and had "no feeling in it" and requesting treatment from emergency room personnel. (*Id.*, p. 15.) Jail officials granted Nunn's request and transported Nunn to Wiregrass Medical Center. Emergency room personnel treated the wound, advised Nunn to continue taking Bactrim, and prescribed Bactroban ointment. (Doc. No. 13-6, p. 127.) Upon discharge, Nunn was diagnosed as suffering from chronic ulcer of the skin site, staph aureus infection, and a penicillin-resistant microorganism infection. (Doc. No. 13-6, p. 121.) The following day, laboratory results indicated that the June 4, 2005, culture had tested positive for staphylococcus aureus. (*Id.*, at p. 99.) The microbiologist noted that "this S. aureus does not demonstrate inducible clindamycin resistance in vitro." (*Id.*) Upon his return to the Geneva County Jail, Nunn was routinely administered medication for the treatment of his staph infection. (Doc. No. 13-5, Def's Ex. D.)

On June 14, 2005, Nunn was sentenced as a habitual felony offender to twenty-five years' imprisonment. (Doc. No. 13-3, Ward's Affid., p. 5.) Nunn was subsequently

transferred from the Geneva County Jail to a state prison facility. On May 17, 2006, Nunn filed this federal lawsuit. (Doc. No. 1.)

## II. STANDARD OF REVIEW

To survive the properly supported motions for summary judgment filed by Ward, Nunn is required to produce some evidence which would be admissible at trial supporting his constitutional claims. Rule 56(e), *Federal Rules of Civil Procedure*. Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To meet this standard, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576 -1577 (11th Cir. 1990). A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a plaintiff fails to make a showing adequate to establish the existence of an element essential to his case, and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material

fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987); *Wright v. Southland Corp.,* 187 F.3d 1287 (11th Cir. 1999); *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1135 (11th Cir. 1996); *McMillian v. Johnson,* 88 F.3d 1573, 1584-1585 (11th Cir. 1996). Summary judgment is therefore appropriate when the pleadings, admissible evidentiary materials and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), *Federal Rules of Civil Procedure*; *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, Nunn has failed to go beyond the pleadings and present any admissible evidence which demonstrates that there is a genuine issue of material fact in order to preclude summary judgment.

### III. DISCUSSION

### A. Res Judicata and Collateral Estoppel

Ward asserts that Nunn[2] is barred by the doctrine of res judicata from bringing this

---

[2] The pleadings indicate that the actions which form the basis of the complaint occurred during Nunn's incarceration in the Geneva County Jail as a pretrial detainee. The Fourteenth Amendment, rather than the Eighth Amendment, provides the appropriate standard for assessing whether conditions of confinement imposed upon a pretrial detainee are violative of the Constitution. *Bell v. Wolfish*, 441 U.S. 520 (1979).

lawsuit because the claims and defendants in this case are identical to those in a case which was previously dismissed by this court.

In *I.A. Durbin, Inc. v. Jefferson National Bank*, 793 F.2d 1541 (11th Cir. 1986), the Court summarized the doctrine of res judicata as follows:

> Res judicata or claim preclusion refers to the preclusive effect of a judgment in foreclosing relitigation of matters that were litigated or could have been litigated in an earlier suit. ... In order for the doctrine of res judicata to bar a subsequent suit, four elements must be present: (1) there must be a final judgment on the merits; (2) the decision must be rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved in both cases.

*I.A. Durbin*, 793 F.2d at 1549 (citations omitted).

In *Nunn v. Ward*, 1:04cv1067-MEF (M.D. Ala. 2004), Ward asserted that he was denied adequate medical treatment and that he was subjected to unconstitutional conditions of confinement. Specifically, he asseverated that, in September 2004, he suffered from "sores, staph infections, bumped skin, splitting of the skin, [and] swelling of the body" and that inmates were forced to sleep on the floor. *Id.* On February 16, 2005, the case was dismissed for Nunn's abandonment of his claims, his failure to prosecute the action, and his failure to comply with the orders of the court.

A dismissal for failure to prosecute acts as an adjudication on the merits. *Harrelson*

---

However, for analytical purposes there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment. *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985).

*v. United States*, 613 F.2d 114, 116 (5th Cir. 1980); *Bierman v. Tampa Electric Co.*, 604 F.2d 929, 930 (5th Cir. 1979); *Shapiro v. United States*, 951 F.Supp. 1019, 1023 (S.D. Fla. 1996). However, an exception to this rule is created when the court otherwise specifies that the dismissal is not considered to be an adjudication on the merits, such as a dismissal without prejudice. *Bierman*, 604 F.2d at 930. *See Simmons v. Chatham Nursing Home*, 93 F.Supp.2d 1265, 1266-67 (S.D. Ga. 2000) (dismissal for failure to comply with discovery orders).

>   Rule 41(b) of the Federal Rules of Procedure provides:

>>   For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication on the merits.

>   In *Nunn v. Ward*, *supra*, this court specified that the dismissal was without prejudice. *Id*. Therefore, the dismissal of the first case does not act as an adjudication on the merits of Nunn's claims against Ward. Consequently, Nunn's claims against Ward are not barred by the doctrine of res judicata.

>   Ward also maintains that Nunn's claims are barred by the doctrine of collateral estoppel. Collateral estoppel or issue preclusion forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit. The well-established prerequisites for collateral estoppel are also stated in *Durbin*, *supra* :

>>   (1) the issue at stake must be identical to the one involved in the prior

litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

Although a dismissal under Rule 41(b), *Fed.R.Civ.P.*, acts as an adjudication on the merits and supports barring a claim based on the doctrine of res judicata, a dismissal for failure to prosecute does not have any collateral estoppel effect. *See* 18A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*: Jurisdiction § 4440 (2002) at 210; *In re Randa Coal Co.*, 128 B.R. 421, 427 (W.D. Va. 1991); *Southern Pacific Communications Co. v. American Telephone and Telegraph Co.*, 567 F.Supp. 326, 328 (D.C. 1983). *See also Artmatic USA Cosmetics v. Maybelline Co.*, 906 F.Supp. 850, 856 (E.D.N.Y. 1995) (collateral estoppel of default judgment).

The record is clear that the claims in the prior lawsuit were never actually litigated and that Ward's claim concerning the denial of medical treatment or jail conditions during his incarceration in 2005 was not presented in the prior proceeding. *See Christo v. Padgett*, 223 F.3d 1324 (11th Cir. 2000) ("When an issue is properly raised .... and is submitted for determination, and is determined, the issue is actually litigated."). Therefore, the doctrine of collateral estoppel does not bar Nunn's claims against Ward in this proceeding.

### B. The Delay of Medical Treatment

Nunn asserts that Ward acted with deliberate indifference to his health by failing to provide adequate medical treatment and delaying his treatment with a physician.

Specifically, he contends that Ward should have responded more quickly to his requests to receive treatment for his staph infection. Ward denies that he acted with deliberate indifference to Nunn's health and asserts that Nunn was provided sufficient medical treatment during his incarceration in the Geneva County Jail.

To prevail on a claim concerning the denial of medical attention, an inmate must show at a minimum that jail or medical officials have acted with deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985). Because society does not expect that inmates will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000 (1992). A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. A jail or medical official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825 (1994). Under this standard, a jail or medical official does not act with indifference by providing medical care that is different from that which an inmate desires. *See Harris v. Thigpen*, 941 F.2d 1495,

1505 (11th Cir. 1991); *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985).

A claim about a failure to provide immediate or emergency medical attention must involve medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem. *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176 (11th Cir. 1994). In contrast, delay or even denial of medical treatment for superficial, non-serious physical conditions does not constitute an Eighth Amendment violation. *Id.*

> The "seriousness" of an inmate's medical needs also may be decided by reference to the effect of delay in treatment.... Where the delay results in an inmate's suffering "a life-long handicap or permanent loss, the medical need is considered serious." ... An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further, we have held that "the tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay." *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir.1994) (emphasis added). Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

*Hill*, 40 F.3d at 1188-89.

Medical records demonstrate that, during his incarceration at the Geneva County Jail, Nunn was routinely provided medication and that emergency room personnel provided medical treatment for the sore on Nunn's arm. Nunn has presented no evidence which even remotely suggests that the brief delay in receiving treatment from an emergency room

physician detrimentally exacerbated his medical condition. Although Nunn maintains that he should have received some other type of treatment, the mere fact that he desired a different mode of medical treatment does not amount to deliberate indifference. *See Harris*, *supra*. The court therefore concludes that Nunn has failed to show that Ward in any way disregarded a substantial risk to his health by delaying or denying him adequate medical treatment for his staph infection. Consequently, Ward's motion for summary judgment with respect to this deliberate indifference claim should be granted.

### C.  The Conditions of Confinement

Nunn asserts that he was subjected to "deplorable" and "foul" conditions of confinement during his incarceration in the Geneva County Jail. (Doc. No. 1, p. 4; Nunn's Affid., p. 1.)  Specifically, he contends that jail officials' failure to take reasonable precautions to prevent the spread of staph infection after an infected inmate entered the jail in 2004 ultimately caused him to contract the infection in June 2005.

Ward denies that Nunn was subjected to unconstitutional conditions of confinement during his incarceration and maintains that cleaning products are provided to inmates on a daily basis for the purpose of sanitizing their living areas and that common areas of the jail are cleaned by trusties. (Doc. No. 13-3, Ward's Affid., p. 3.)  Ward also alleges that, upon discovering that another inmate had a staph infection in 2004, jail officials followed the advice of health officials by purchasing a new water heater and installing hand sanitizers to prevent the infection from spreading. (*Id.*, at p. 4.)  Nunn concedes that a water heater was

installed and that inmates were provided cleaning products each morning; however, he argues that "these so-called cleaning materials are simple basic house cleaning materials and are not designed to sanitize any area (house or jail) which is infected with extreme levels of mold and staphyloccus aureus bacteria" and that jailers should have provided cleaning materials "at any time." (Doc. No. 23, pp. 1-2.)

As previously discussed, a jail official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health or safety when the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825 (1994). The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337 (1981). Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment. *Rhodes*, 452 U.S. at 347.

Conditions of confinement may also constitute cruel and unusual punishment when the conditions involve or result in "wanton and unnecessary infliction of pain, [or] ... [are] grossly disproportionate to the severity of the crime warranting imprisonment." *Id*. "Conditions . . . alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities.  Such conditions could be cruel and unusual under the contemporary standard of decency. . . .  But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Id.* To determine whether

conditions of confinement constitute cruel and unusual punishment, the court must look to the effect the condition has upon the inmate. *Id.* at 366.

> The court must examine the effect upon inmates of the conditions of the physical plant (lighting, heat, plumbing, ventilation, living space, noise levels, recreation space); sanitation (control of vermin and insects, clean places for eating, sleeping, and working,); safety (protection from violent, deranged or diseased inmates, fire protection, emergency evacuation); inmate needs and services (clothing, nutrition, bedding, medical, dental, and mental health care, visitation time, exercise and recreation, educational and rehabilitative programming); and staffing (trained and adequate guards and other staff, avoidance of placing inmates in positions of authority over other inmates.) . . . When "the cumulative impact of the conditions of incarceration threatens the physical, mental, and emotional health and well-being of the inmates . . ." the court must conclude that the conditions violate the Constitution.

*Id.* at 363-64 (Justice Brennan concurring)(citations omitted).

In a case complaining about the conditions of confinement generally or about several different conditions, the court should consider whether the claims together amount to conditions which fall below constitutional standards. *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985); *see also Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).

Nunn has failed to come forward with any evidence demonstrating that the conditions of confinement in the Geneva County Jail caused him to suffer a serious physical injury. Specifically, Nunn has not submitted a doctor's diagnosis or any medical evidence supporting his allegations that the conditions in the jail caused his staph infection. This court therefore concludes that Nunn's allegation that jail conditions were the cause of his infection

is unsubstantiated and completely speculative. *See Brown*, 906 F.2d at 670 (holding that a litigant has the burden of demonstrating a sufficient causal connection between a defendant's conduct and a constitutional violation). In addition, Nunn has failed to show that Ward was aware of an obvious risk of serious harm to him. For instance, there is no evidence indicating that Nunn submitted an inmate grievance to Ward or any other jail official requesting different sanitizing products in 2004 or 2005.

Nunn has also failed to demonstrate that Ward's actions resulted in the denial of the minimal civilized measure of life's necessities. It is undisputed that, after an infected inmate entered the jail in September 2004, jail officials installed a new water heater and implemented other precautionary measures and that Nunn was provided cleaning products and other necessities during his incarceration.

Based on the foregoing, this court concludes that Nunn has failed to establish a genuine issue of material fact with respect to his claims that Ward subjected him to unconstitutional conditions of confinement or otherwise acted with deliberate indifference to his health and safety. Consequently, Ward's motion for summary should be granted.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motions for summary judgment be GRANTED.

2. This case be dismissed with prejudice.

3. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before April 24, 2007 the parties may file objections to this Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 11th day of April, 2007.

      /s/Charles S. Coody  
CHARLES S. COODY  
CHIEF UNITED STATES MAGISTRATE JUDGE